In the matter of DAY, on complaint of BENSON, Receiver.

APPEAL.   (1) *Final order in proceeding for contempt, appealable.*
RECEIVER.   (2–4) *Rights and liabilities as to third parties.*
CONTEMPT.   (5) *What may be tried in proceeding for contempt.*

1. A final order in a proceeding for contempt is appealable.
2. Where property is legally in possession of a receiver appointed by the court, it is the duty of the court to protect his possession, not only against violence but against suits at law.
3. By agreement between the parties in interest, one-fourth of the shingles manufactured from certain lumber at a certain mill were to be delivered by the mill owners, as the property of E. & B., to X., who had been appointed by the court " receiver of all moneys, assets and property" of said E. & B.; and the mill owners afterward delivered to X. certain shingles made from such lumber, as a part of the one-fourth belonging to said firm.   *Held,* that X. was lawfully in possession of such shingles as receiver, and that if there had been a mistake in such delivery, and the shingles belonged in fact to .D., the only remedy of the latter was by application to the court for redress, or for leave to sue; and he could not lawfully take possession of the shingles and convert them to his own use.
4. In a proceeding against D. for a contempt in taking such shingles from the receiver's possession, where it appeared that he had sold them and they had been removed from the state, the court did not err in finding the value and ordering D. to pay the same to the receiver; nor in further ordering that he be allowed to deduct from such value the amount paid by him for manufacturing the shingles; nor in appointing a referee to determine and report the amount so paid.
5. The receiver's title or ultimate right of possession could not be tried in such a proceeding by him for contempt, but only in some appropriate action to be instituted against him.

APPEAL from the Circuit Court for *Brown* County.

Proceedings for contempt.   In an action brought by one Evans, of the firm of Evans & Brown, against his partner, for a dissolution of the partnership and for a settlement, *Benson,* the complainant herein, was appointed receiver " of all the moneys, assets and property" of said firm; and his affidavit upon which this proceeding is based, dated March 17, 1873,

charged the defendant, *L. J. Day*, with having taken from him, on the 11th of September, 1872, without his knowledge or consent and with full knowledge of his rights and of the capacity in which he held them, some ninety-three thousand shingles of which he had taken and then held possession as such receiver. Another lot of shingles was also alleged to have been taken by him in the same manner; but there was no proof that they were ever in the receiver's possession. The answer of the defendant *Day*, upon order to show cause, denies that the shingles mentioned in complainant's affidavit were ever in his possession as receiver, and alleges title in the firm of L. J. Day & Co., of which defendant was a member. From affidavits produced at the hearing, it appears that the shingles alleged to have been taken by *Day* were manufactured by the firm of L. J. Day & Co. from timber cut after the appointment of such receiver, upon lands owned by them and by the firm of Evans & Brown in undivided moieties. By an agreement between them and the said firm of Evans & Brown, they were to have three-fourths of the shingles manufactured from such timber; and of the remainder, one-eighth was to belong to Evans, and one-eighth to Brown. Said Evans & Brown were also to pay Day & Co. a certain sum per thousand for manufacturing their portion of the shingles, and the proceeds of sales of Brown's share, after deducting all costs, were to be applied to the payment of his private indebtedness to Day & Co.

One Sanborn, who had charge of the mill where the shingles were manufactured, was instructed by *Day* to pile and keep by themselves the shingles belonging to Evans & Brown, for *Benson*, the receiver; and though *Day* denies that he ever told Sanborn to *deliver* them to *Benson*, it appears to have been understood that they were to be so delivered, and that, in fact, until after the alleged taking by *Day*, they were all so delivered. It appears also from the affidavit of Sanborn, that the ninety-three thousand shingles claimed to have been taken by *Day* from the receiver, were a part of the one-fourth set apart

as belonging to Evans & Brown, and, as the property of that firm, were delivered to Manuel Brunette, the captain of a flat boat, who testified that he received them under written order from *Benson*, as receiver, and delivered them by his direction at a certain dock in Green Bay. That *Day* took the shingles from the dock where they were discharged by Brunette, transferred them to his own dock, and from thence shipped them to Chicago, and there sold them, was not disputed. *Day*, however, denied that he knew, at the time of taking the shingles, that they had been delivered to or were in possession of *Benson* as receiver; and some testimony was introduced to show that *Benson* claimed to hold the property as assignee in bankruptcy of Brown, to which position he had also been appointed.

By order of the court, *Day* was adjudged guilty of contempt in taking from the possession of *Benson*, as receiver, ninety-three thousand shingles, of the value of $3 per thousand. It was further adjudged that said receiver had sustained an actual loss of such value less the cost of manufacture; a reference was made to ascertain what amount was due to *Day* for such manufacture; and it was ordered that upon the filing of the referee's report, *Day* should pay forthwith to the receiver, or his attorney, the value of the shingles less any amount so found by the referee, together with the costs of the proceeding and reference; and that, in default of such payment, he be imprisoned in the county jail until such amount and costs were fully paid. From this order *Day* appealed.

*Neville & Tracy*, for appellant, contended that it was established by the testimony that Day & Co. were, under their agreement with the firm of Evans & Brown, the legal owners of three-fourths of all shingles, including those taken by *Day*, manufactured by them from timber cut on the joint lands, and that they were in the rightful and undisputed possession of the whole of such shingles; that the shingles were taken by *Benson* from the mill of Day & Co., without their consent, and therefore, his possession having been gained by the commission of

In the matter of Day, on complaint of Benson, Receiver.

a trespass, he was not in a position to demand protection from the court by its summary process for contempt, but was remitted to his legal remedies. *Parker v. Browning*, 8 Paige, 388; Story's Eq. Jur., § 833, b.; Kerr on Receivers, 170; Edwards on Rec's, 130, note; *Fitzpatrick v. Eyre*, 1 Hagan, 171. They also argued that the order was not necessary for the protection of the receiver's possession, the proceeding having been instituted seven months after the taking by *Day*, and after the property had been disposed of by him; and that it should not have been granted. Kerr on Receivers, 179. They further contended that the order appointing *Benson* receiver gave him no right to the possession of the shingles in controversy, because the timber from which they were manufactured was then growing upon the land, and was real estate, requiring an assignment to pass any interest to him (1 Barb. Ch. R., 592; *Chautauque Bank v. Risley*, 19 N. Y., 374); and that there was no disturbance of his possession as receiver, sufficient to found these proceedings on, because such order did not specify over what particular property he was appointed. Kerr on Receivers, 169, 175.

*Hudd & Wigman*, for respondent:

1. The act complained of was a direct interference with an officer of the court, and tended to impair its authority; and, within the rule laid down by this court in *State ex rel. Chappell v. Giles*, 10 Wis., 101, the order is not appealable. 27 Vt., 56; 6 Ind., 423; 2 Am. Law Reg., 44; 1 Blackf., 166; 7 Wheat., 38; 1 Carter (Ind.), 161; 15 Abb. Pr., 388-90; 7 Paige, 813; 10 id., 263; 8 id., 388; 5 Smith (N. Y.), 370. The order provides for a reference, and is not *final* within the meaning of the statute allowing appeals in special proceedings (Tay. Stats., 1635, § 11). *Brinkley v. Brinkley*, 47 N. Y., 40; 1 Chand., 22; 11 Wis., 91; 9 id., 246; 2 id., 421. 2. Even if appealable, the order is sustained by the preponderance of evidence, and, as in case of a judgment, will not be disturbed on appeal. [The remainder of the argument is devoted to a review of the

various exceptions not noticed in the opinion, and therefore, need not be stated here.]

DIXON, C. J.   The question of the appealability of this order has been settled in the case of *Witter v. Lyon*, a decision of even date herewith [*ante*, p. 564].   The order is appealable.

The proposition is conceded by counsel for the appellant, that when property is legally in the possession of the receiver it is the duty of the court to protect such possession, not only against violence, but also against suits at law.   Were the shingles in question in the lawful possession of the com- plainant *Benson*, as receiver, at the time they were taken by the appellant *Day*, and converted to his own use, or to the use of the firm of L. J. Day & Co., of which he was a member? The taking by *Day* is undisputed.   The affidavits of Sanborn, the agent in charge of the mill at which the shingles were manufactured, show very plainly that the shingles had been delivered to the complainant as receiver, and that they were so delivered as and for a part of the one-fourth of the shingles cut from timber taken from the lands mentioned by the witness, which one-fourth belonged to the firm of Evans & Brown and were to go into the possession of the complainant as receiver. The same affidavits also show that Sanborn was authorized to make such delivery.   The arrangement between the parties L. J. Day & Co., the owners of the mill and part owners of the lands, Evans & Brown, part owners of the lands, and the complainant as receiver of the moneys, property and effects of the latter firm, respecting the manufacture of the shingles and the division of them when manufactured, is clearly set forth in the same affidavits, and likewise in the affidavit of Oscar Koch, who was one of the firm of L. J. Day & Co.   It appears that San- born, or Sanborn and Olmstead, in charge of the mill, were to set apart the one-fourth for the receiver as the manufacture progressed, and that they were so instructed by L. J. Day & Co   The authority of Sanborn to make delivery is in reality

not controverted, and he deposes that he did deliver, and that the shingles in controversy were a portion of the one-fourth previously set apart. Under these circumstances the possession of the receiver cannot be said to have been unlawful. He was rightfully in possession, and the court below was correct in so determining.

The claim put forth by the appellant *Day* seems to be, that Sanborn was mistaken or wrong in the delivery, and that the shingles delivered were not a portion of the one-fourth to which the receiver was entitled. If Sanborn was mistaken, and the shingles ought not to have been delivered, that did not change the character of the receiver's possession. It was still a lawful possession, and *Day's* remedy was not to regain the property by an act of trespass, but to apply to the court for redress or for leave to sue.

Neither can the receiver's title, or his ultimate right of possession, be tried in this proceeding for a contempt. That can only be tried in some action appropriate for that purpose, to be instituted against the receiver.

But it is said that the order appointing the receiver did not give him a right to the possession of the shingles. We do not so understand the order, even as modified; for the modified order made him "receiver of all the moneys, assets and property of the firm of Evans & Brown." The shingles were the property of the firm, or so claimed to be, and as such it was proper for the receiver to take them into his possession.

*Day* had sold the shingles, and they had been taken out of the state, before this proceeding was instituted; and hence it was impossible for the court to compel a restoration of them to the possession of the receiver. The court found the value of the shingles, and ordered that *Day* pay it to the receiver by way of reparation. This was a proper order.

The court also directed that *Day* be allowed the amount, if any, paid by him for the manufacture of the shingles, and that the same be deducted from the value so found. A referee was

appointed to hear and determine such amount, and report the same to the court.    These directions were, under the circumstances, likewise proper.

We see no objections to the order, and direct that it be affirmed.

*By the Court.* — Order affirmed.