# IN RE HOOVER.

No. 2567.   Decided May 11, 1914 (141 Pac. 101).

1. CONTEMPT—CIVIL CONTEMPT—KNOWLEDGE OF DECREE. A party to a decree, who for a long time asserted rights thereunder, cannot escape punishment for contempt for violation, on the ground that it is not alleged in the application that he was served with a copy or notice of the decree. (Page 479.)

2. CONTEMPT—CIVIL CONTEMPT—PROCEEDINGS TO PUNISH. In a proceeding to punish for contempt for violation of a decree fixing priorities of water rights, evidence *held* sufficient to sustain a finding that respondent willfully, and in disregard of the rights of other parties, took water in excess of the amount to which he was entitled. (Page 480.)

3. CONTEMPT—CIVIL CONTEMPT—PUNISHMENT. Under Comp. Laws 1907, section 3368, authorizing the imposition of a judgment for damages against a contemner and in favor of the party aggrieved, the damages sustained by the parties aggrieved must be ascertained in the usual manner, and hence an award of a lump sum to a large number of complainants cannot be sustained, as apportionment would be impossible.[1] (Page 481.)

4. CONTEMPT—JUDGMENT—JOINT JUDGMENT FOR DAMAGES. Where a decree settled conflicting water rights of numerous parties, the rights of the parties are not joint, and hence, where a large number of them joined in a proceeding to punish one of the parties for contempt for violation of the decree, a joint judgment for damages suffered should not be rendered; the wrong suffered by the various parties being distinct and several. (Page 482.)

---

[1] Davidson v. Munsey, 29 Utah, 181, 80 Pac. 743; Thompson v. McFarland, 29 Utah, 455, 82 Pac. 478.

5. CONTEMPT—APPEAL—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY. Objections as to misjoinder must be timely or they are deemed waived. A defendant proceeded against for contempt for violation of a decree, while he cannot object as for a misjoinder where all the parties to a decree join in the application to have the defendant punished for a violation thereof, yet he may on appeal object to a joint judgment for damages in favor of all the parties to the application where their interests are distinct and the judgment is for a lump sum. (Page 483.)

APPEAL from District Court, Fourth District; *Hon. A. B. Morgan,* Judge.

In the matter of the application to adjudge John W. Hoover guilty of contempt for violation of a decree.

From an order adjudging him guilty of contempt and imposing a fine, respondent appeals.

AFFIRMED IN PART AND REVERSED IN PART.

*Parker & Robinson* for Hoover.

*E. E. Corfman* and *Jacob Coleman* for respondents.

FRICK, J.

This proceeding was commenced in the district court of Utah County, Utah, against one John W. Hoover, to have him adjudged guilty of contempt. Upon an application therfor being duly filed, an order was made by the district court of Utah County requiring said Hoover to show cause why he should not be adjudged guilty of contempt. Said Hoover, hereafter called appellant, appeared in court and filed an answer to the allegations contained in the application, and upon a hearing to the court was adjudged guilty of contempt in that he had violated the provisions of a certain judgment or decree made by the district court aforesaid. The facts alleged in the application for an order to show cause in substance are as follows: That on the 26th day of January, 1907, in an action then pending in the district court of Utah County, in which there were 113 plain-

tiffs, four of whom were private corporations and one a municipal corporation and the others natural persons, and twenty-seven defendants, four of whom were private corporations and the rest natural persons, a judgment or decree was duly entered in which the water of Provo River was divided into two classes, namely, A and B; that in class A was included all the water of said stream when the flow thereof did not exceed 17,467 cubic feet per minute of time measured at the mouth of Provo Canyon, etc.; that class B included all the water flowing in said stream in excess of said 17,467 minute feet measured as aforesaid; that in said decree the 113 plaintiffs above referred to and one of the defendants therein were adjudged to be the owners of 17,000 minute feet of class A water, and the appellant in this proceeding was adjudged to be the owner of 114 minute feet of said class A water; that said decree also provided that "each of the parties to said action, its agents, servants, employes, and its successors and assigns, are forever enjoined, restrained, and forbidden to in any manner interfere with the waters of the said river and the flow thereof, or with any device or arrangement for the control thereof, so as to in any manner interfere with the rights of the other parties in said action or any of them." It is further alleged "that on or about the 22d day of July, A. D. 1913, the said defendant John W. Hoover (appellant) in willful disregard of said decree and injunction, and in contempt of the same, and wrongfully and in disregard of the rights of the plaintiffs and the defendant the West Union Canal Company (for and in behalf of all of whom affiant makes this affidavit), . . . diverted and used for the purposes of irrigation a large quantity of the waters of said Provo River to which the plaintiffs and the said defendant to the West Union Canal Company were entitled in said decree, to their damage in the sum of $200." It was also alleged that the decree was in full force and effect at the time the water was taken and used by appellant as aforesaid. It is also stated in the application that the same is made "for and in behalf of all

the plaintiffs in said action and the defendant the West Union Canal Company, a corporation."

At the hearing it was proved that the appellant had violated the said decree in that he used a large quantity of water of the Provo River to which he had no right whatever, and which belonged to the plaintiffs and the defendant, the West Union Canal Company, and the court so found the fact to be. The court found the appellant guilty of contempt and adjudged that he pay a fine of twenty-five dollars, and in default of payment that he be committed until paid or until the further order of the court. The court also entered a judgment as follows: "It is hereby ordered, adjudged, and decreed that the defendant John W. Hoover (appellant) pay to the clerk of this court for the benefit of the complainants herein the sum of $150" as damages sustained by them, as previously found by the court.

The appellant contends that the application was defective in substance because it did not appear therefrom that he "was served with a copy of the decree which it is alleged he violated, and it nowhere appears that he had any knowledge or notice whatever of the existence of such decree." The contention is manifestly untenable. The appellant was found guilty of having violated the provisions of a certain decree to which he was a party, and by which his rights to any of the water of Provo River were adjudged. In that decree his rights to the use of water from the stream were fixed and defined. He for years acted upon and claimed his rights under that very decree, and for him now to contend that he had neither notice nor knowledge of its existence, as a matter of course, cannot prevail. The law upon this question is tersely stated in 9 Cyc. 12, in the following words:

"It must appear that such order, judgment, or decree has been personally served on the one charged, *or that he had notice of the making of such order or the rendition of such judgment or decree.*" (Italics ours.)

In 3 Ency. Pl. & Pr. 777, it is said:

"Where one is present in court and has personal knowledge of the order he is alleged to have disobeyed, no service of the same upon him need be shown."

This would be true, even in a case where the one charged was not a party to the action but merely a privy, or in some other way related to the proceeding. *In Oswald,* Contempt of Court, 203, it is said:

"In order to justify committal for breach of a prohibitive order, it is not necessary that the order should have been served upon the party against whom it has been granted, if it be proved that he had notice of the order aliunde."

If this is the law with respect to prohibitive orders generally, it must likewise be true with respect to judgments and decrees to which the one charged is a party and under which he claims certain rights.

Counsel for appellant further contend that "there is no evidence in the record which proves that the defendant John W. Hoover took the water alleged to have been taken willfully and in disregard of the rights of plaintiffs and the defendant West Union Canal Company," Upon that question the testimony of Mr. Goddard, who was a witness against appellant, and that of the water commissioner, stands uncontradicted. Mr. Goddard testified that the appellant, on the day on which it is charged he used an excessive amount of water, contrary to the provisions of the decree, in fact used an amount of water greatly in excess of the amount to which he was entitled under the decree; that the witness and the water commissioner went to see appellant about the matter; and that he "admitted to us that he had used the water there and intended to use it. He said that he was taking advantage because he was sure that he was going to have enough. . . . And he said that he would put the dam in as often as we tore it out; (that is, that it was cheaper for him to put it in than it was for us to send a man up there and tear it out) ; and he also said that it would pay him to pay a fine and raise a crop of hay instead of letting it go." The water commissioner testified

that appellant had frequently taken and used water contrary to and in disregard of the provisions of the decree, and that he had done so on the 22d day of July, 1913; that he went to see appellant with Mr. Goddard, whose testimony we have just referred to, for the purpose of avoiding, if possible, further transgressions by appellant. The water commissioner said:

"Mr. Hoover (appellant) upon this day assumed an attitude of absolute defiance. He said that it was a great deal easier for him to put in his dam and take this water from Deer Creek than it was for the commissioner or any one else from Provo to come up there and take it (the dam) out. He also said that he thought by taking this water he could raise enough crops on his land to probably pay all of his fine that he would have to pay."

It is thus made apparent from appellant's own statements that he took and used the water willfully and without any regard for the rights of others. Moreover, from the foregoing statements it is clear that he did not even make an attempt to justify the taking of the water but took it because, as he considered the matter, it was cheaper and more profitable for him to violate the decree and pay a fine for doing so than it was to permit others to use their own water. Such conduct is beyond justification or excuse either in law or morals.

Appellant, however, also complains of that part of the judgment which awards damages to the so-called "complainants." As pointed out, there were 113 plaintiffs to the decree and twenty-seven defendants. All the plaintiffs and one defendant are "complainants" in this proceeding, and judgment in their favor in the sum of $150 for damages sustained by them was given by the court. We have a statute (Comp. Laws 1907, section 3368) which authorizes the court, in case a contempt has been committed, in addition to the imposition of a fine and imprisonment, also to adjudge that the person guilty of the contempt "pay

the party aggrieved a sum of money sufficient to indemnify him and to satisfy his costs and expenses."

Under the foregoing provision, the court may hear evidence and assess the damages against the contemner, if any have been sustained by the "party aggrieved." The courts, however, hold that, where damages are awarded under such a statute, they must be ascertained in the same way as is usually done; that is, under the procedure applicable in courts of justice for ascertaining what the damages, if any have been inflicted, amount to. See Rapalje on Contempt, section 133. This court is committed to that doctrine. *Davidson v. Munsey,* 29 Utah, 181, 80 Pac. 743; *Thompson v. McFarland,* 29 Utah, 455, 82 Pac. 478.

Under the foregoing rule, that part of the judgment in which damages are awarded to the "complainants" cannot be sustained. Where there is only one party who sustained damage by the contempt, or where there are several whose interests are joint, ordinarily no difficulty arises in assessing and awarding judgment for the damages. Where, however, as here, there are 114 "complainants" in whose favor a judgment is rendered for damages in a lump sum, we cannot see how it is possible for any one, however wise, to make apportionment of the damages thus allowed. That is an insuperable obstacle even if there was no other.

But there is also another obstacle which is clearly pointed out in 1 Black on Judgments, section 145. It is there shown that, where the rights are not joint but are several and distinct, the parties to the action "cannot have judgment for the damages done to the property of each, but only such relief as is common to all the plaintiffs." The damages in the case at bar arose out of a tort, and, in so far as it affected the "complainants'" property or property rights, each suffered in a different degree, and, if not in a different degree, each nevertheless suffered in a different right; that is, in an individual and not a joint right. While judgment could have been entered in favor of either one of the corporations for the benefit of all of its

stockholders, yet judgment could not be entered in favor of all corporations jointly for the benefit of all of their stockholders; nor could a judgment for the "complainants" be given to satisfy the claims of all the individuals who joined in the application for contempt.

While it is true that ordinarily objections respecting the joinder or nonjoinder of parties must be timely made or it is waived, yet that rule has no application here. Here it was perfectly proper for all of the "complainants" to unite in one application for contempt, and hence appellant could not object because they joined in this proceeding. Their interest in having the decree obeyed was joint, but the damages they may have sustained to their property or property rights by reason of the acts constituting the contempt were clearly several and distinct. The "complainants" could therefore not have properly united in an action to recover the damages which may have been sustained in consequence of the acts constituting the contempt, and, for the same reason, they cannot, over the appellants objections, have one judgment against him for such damages.

The judgment adjudging appellant guilty of contempt and that he pay a fine of twenty-five dollars and, in default of payment, stand committed as ordered by the court is affirmed. That part of the judgment awarding damages is reversed, set aside, and held for naught. Neither party to recover costs.

McCARTY, C. J., and STRAUP, J., concur.