## FOREMAN v. FOREMAN.

No. 6958. Decided December 23, 1946. (176 P. 2d 144.)

See 27 C. J. S. Divorce, sec. 262; 17 Am. Jur., 466.

For opinion on motion to dismiss attorney's appeal from judgment for contempt in this case see 111 Utah 113, 176 Pac. 2d. 165.

*Barclay & Barclay,* of Salt Lake City, for appellant.
*George W. Latimer,* of Salt Lake City, *Grover A. Giles,*

Atty. Gen., and *Calvin L. Rampton,* Deputy Atty. Gen., for respondent.

PRATT, Justice.

On November 16, 1945, Mrs. Foreman instituted an action in the Third District Court of Utah for a divorce from Otto C. Foreman. That same day she withdrew from the joint checking account of herself and Mr. Foreman, $1800 and took from their safety deposit box all the United States Government Bonds standing in the names of the parties. A temporary restraining order restraining her from disposing of the money or the bonds was served on her on November 21, 1945. An order to show cause why this restraining order should not be made permanent was heard on November 26, 1945. By stipulation of counsel the temporary restraining order was continued in force until final determination of the cause. In that order the bonds were spoken of as the value of $4000. The bonds taken by Mrs. Foreman were placed by her in a safety deposit box in the Utah State National Bank. The trial of the case took place on February 14 and 15, 1946. At its conclusion the court awarded Mrs. Foreman a decree of divorce; awarded her the $1800 she had taken from the joint bank account; and ordered her to return the bonds she had, which had belonged to Mr. Foreman prior to her marriage with him. These bonds were to be returned that day—February 15th. There was some controversy as to their amount at the time, and also as to certain items of personal property. The matter was continued to the following Wednesday and the controversy left for counsel to settle if they could.

Mrs. Foreman got bonds from the bank and delivered them to the office of her counsel on that day, but they were not delivered to the other party or his counsel until Wednesday the 20th, upon which day Mrs. Foreman appeared pursuant to an order to show cause why she should not be punished for contempt. The court ordered counsel for Mrs. Foreman to produce the bonds, and $1250, face value of bonds were produced.

The court found Mrs. Foreman guilty of contempt of court, sentenced her to 30 days in jail and awarded Mr. Foreman judgment against her in the sum of $1518.75 as

damages, $50 attorney's fees, and costs of court in the sum of $4.50. This award was apparently made pursuant to Section 104-45-11, U. C. A. 1943, which we quote later on. The amount of damages were computed as ¾ of the difference in face values between the bonds claimed by Mr. Foreman to have been taken by Mrs. Foreman—$3275— and the bonds returned—$1250. On February 20th the court signed findings of fact, conclusions of law and an order supporting the contempt matters set out above. The findings of fact, conclusions of law and decree of divorce (signed April 6, 1946, nunc pro tunc as of February 15th) do not agree as to the amount of the bonds. The findings of fact state the amount as $3275 as taken, but change this to approximately $3200 when speaking of what should be returned; the conclusions and decree state them as approximately $3200. The decree of divorce directed the delivery of the bonds in that approximate amount to Mr. Foreman on the 15th of February; and as indicated above, this decree was signed after the judgment for $1518.75 had been entered.

Mrs. Foreman has taken the following appeals:

From the finding, judgment, conviction and sentence made the 20th day of February, 1946, whereby plaintiff was found guilty of contempt and sentenced to thirty days in jail.

From

"that certain judgment, Findings of Fact and Conclusions of Law made and entered * * * upon the 20th day of February, 1946, whereby defendant was awarded judgment against plaintiff for the sum of $1518.75, together with the sum of $50.00 attorney's fees and together with costs of court in the sum of $4.50, also whereby said judgment * * * was decreed to be a lien upon and impressed as a lien upon the real property of plaintiff * * *."

And from the findings of fact, conclusions of law and decree signed the 6th day of April 1946 nunc pro tunc as of the 15th of February 1946.

Mr. Foreman has appealed from the award of the $1800, to Mrs. Foreman.

Mrs. Foreman, appellant, discusses three propositions in her brief. The first two of which concern the validity of the oral order given in open court as a basis for contempt sentence and judgment awarding damages, attorney's fees and costs to the defendant.

It is the contention of the plaintiff: (1) That the court order was not exact enough to hold appellant guilty of contempt for disobeying it; (2) that such oral order was unlawful; (3) and that oral orders are not tangible enough to base a contempt conviction upon. And that a judgment could not be granted defendant for the damages he suffered by plaintiff's failure to comply with said order.

The following discloses the oral order and other proceedings pertinent to our consideration of the above points (page 179 of transcript):

"* * * They have their separate property now?

"Mr. Latimer: No, Your honor, we do not. We want an order returning the $3200.00, in United States Government bonds that the plaintiff has up in her safety deposit box at the Utah State National Bank.

"The Court: That may be entered into the order. The plaintiff will be directed to return to the defendant the bonds that she now holds, $3200.00—

"Mr. Barclay: Let's make—

"The court:—par value.

"Mr. Barclay: Let us make it this way. He said thirty-two hundred, and she said on the outside of the envelope it said twenty-nine hundred. Now, let's make—

"The Court: All bonds that she has that the defendant had orginally?

"Mr. Barclay: Yes.

"The Court: If you have to go into a fuss over that, we can do it; and the money now remaining in the joint account is the defendant's money.

"Mr. Barclay: Defendant's?

"The Court: This defendant's.

"Mr. Barclay: In the joint account now?

"The Court: Yes.

"Mr. Barclay: Oh.

"The Court: And the $1800.00 withdrawn by the plaintiff will be given to her in lieu of all alimony and costs, each party to bear their own costs.

"Mr. Latimer: Your Honor, may I have this definitely understood that in this restraining order that was issued against the plaintiff she was prohibited, of course, in disposing of all of the property, including those bonds. I would like it definitely understood now that that order is continued in force and effect and that she is not to dispose of those bonds except to return them to the defendant.

"Mr. Barclay: I would like a further order, Your Honor that you assess the attorney fees against him.

"The Court: No, I am going to leave each party with their fees. If the lady does not return those bonds, from here out I suppose it would be embezzlement.

"Mr. Latimer: I just want it definitely understood by her that that order is still in force and effect.

"The Court: That is right, and the bonds are to be turned over to the defendant. If there should be a dispute between them as to the amount of bonds that he receives back as against the amount that he turned in, I suppose he will have to bring an action against her for it.

"Mr. Barclay: That's all right, Your Honor, because there is a dispute right now. The order is that—

"The Court: She doesn't know how many.

"Mr. Barclay: She took the envelope—* * *

"Mr. Barclay: Why not do this, Your Honor, by way of suggestion. Why not have Mr. Latimer give me an itemization, (A), of the bonds that he claims. He says he's got it. (b), that he give me an itemization of what Mr. Foreman claims is out there, and I will discuss it with my client; and if all the bonds are there, I will deliver them to him and take a receipt from him for the bonds. Second, then I will discuss with her what the personal property is out there, and then I will report back to Mr. Latimer, and we will sit down and go over what she disputes and what she says is his.

"The Court: Well, and then shall I continue this matter to take testimony on the disputed items in case you two gentlemen can't agree?

"Mr. Barclay: That's a good idea. * * *

"Mr. Latimer: Then as I understand it, I will furnish Mr. Barclay this morning the total number of bonds. Those bonds don't need to wait for the week?

"The Court: No.

"Mr. Barclay: I am not going—frankly, Judge Ellett, if he furnishes them, I am not going to promise to run right up and down to his office.

"Mr. Latimer: I don't expect it.

"Mr. Barclay: I have been in court three and a half days. I have got office work to take care of.

"The Court: How long will it take to get the bonds?

"Mr. Barclay: One or two days.

"The Court: Wouldn't take over ten minutes.

"Mr. Barclay: I will abide by the ruling of the court, but I am not simply going to leave and walk up there. I have got other work to do.

"The Court: I will order the plaintiff to turn the bonds over today. I don't care who does it. I see no reason for delay. I can't see why in ten minutes from now she can't have those bonds in her hands and in the hands of this gentleman if they are there. If they are not there, if there has been any horseplay in connection with those bonds, then, of course, it may not be able to be handled so readily. The court will recess until two o'clock. This matter is continued to nine-thirty Wednesday."

The above-quoted language indicates that Mrs. Foreman was to turn over the bonds she had in her possession that originally belonged to defendant, but did not determine how many such bonds she did have in her possession. The minute entry made upon this oral pronounce- ■ ment did not fix that amount either. The subsequent discrepancy in the findings of fact, conclusions of law and decree indicate clearly that the amount of the bonds then in her possession was in doubt in the court's mind. However, the order was specific that she was to turn over the bonds she had, be that amount what it might. This was not done, and theoretically at least, Mrs. Foreman was in contempt of court. The evidence discloses that she delivered the bonds to her counsel's office. This is a rather natural thing for any client to do, presumably with the expectation that he would look after her interests. He failed to do so. (Incidentally, he was found guilty of contempt for that failure among other things and that matter is now before us, upon motion, for consideration.) At to whether or not the lower court was too harsh in the sentence imposed upon Mrs. Foreman, we leave for his reconsideration in the light of what we have just said, but we are constrained to hold that he had the right under the circumstances to held her in contempt of court.

Appellant attacks the contempt order upon the ground that the order of which a litigant is found ■

guilty of disobeying must be made in writing to support the contempt.

Section 104-42-1, U. C. A. 1943 states:

"Every direction of a court or judge, made or entered in writing and not included in a judgment, is denominated an order. An application for an order is a motion."

Counsel for the defendant in the quoted portions of the record asked the court for an order requiring the return of the $3200 in United States Government Bonds and in response to this request the court made the order indicated above and said order was reduced to writing by the clerk of the court as a minute entry. We hold that this is all that Section 104-42-1 requires. We have an order of the court "entered in writing" by the clerk of the court on February 15, 1946. To hold that the order had to be "made in writing" we would have to ignore the plain meaning and language of our statute—"made" and "entered" are in the alternative. See 37 Am. Jur. 513, Sec. 29 and notes.

Section 104-45-1, U. C. A. 1943, in subsection (5) sets down the following acts as contempt of the authority of the court:

"(5) Disobedience of any lawful judgment, order or process of the court."

Since we hold that the order in the form given by the court was a valid, lawful order it follows that the plaintiff's disobedience is a contempt of court, and under Section 104-45-1, U. C. A. 1943, the court had the right to so find. It appears obvious that Mrs. Foreman knew she was to deliver some bonds, as she got them and took them to her counsel's office.

Having resolved in favor of the defendant the problems encountered in the plaintiff's contention that the court's order was invalid and disobedience to said order not a contempt of court, consideration of the plaintiff's second contention, that the judgment for damages is erroneous, must be limited to points raised by plaintiff, as to whether

the defendant's damages were propery ascertained and whether costs may be assessed against the plaintiff without a memorandum of costs and disbursements served and filed. Section 104-45-11, reads as follows:

"If an actual loss or injury to a party in an action or special proceeding, prejudicial to his rights therein, is caused by the contempt, the court, in addition to the fine or imprisonment imposed for the contempt or in place thereof, may order the person proceeded against to pay the party aggrieved a sum of money sufficient to indemnify him and to satisfy his costs and expenses; which order and the acceptance of money under it is a bar to an action by the aggrieved party for such loss and injury."

This section grants the court power to enter judgment covering any loss the defendant may have sustained. *In re Hoover,* 44 Utah 476, 141 P. 101; *Davidson* v. *Munsey,* 29 Utah 181, 80 P. 743.

No bonds were delivered on February 15th as ordered. What loss to defendant is attributable to this failure?

In a contempt proceeding such as this the damages suffered by the party aggrieved are for all practical purposes measured in the same manner as the damages in the case where the party proceeded against is being sued for his failure to perform an obligation undertaken voluntarily. *State ex rel. Nicomen Boom Co.* v. *North Shore Boom & Driving Co.,* 67 Wash. 317, 121 P. 467, Ann. Cas. 1913D, 456; *in the Matter of Day on Complaint of Benson, Receiver,* 34 Wis. 638; *Noble Tp.* v. *Aasen,* 10 N. D. 264, 86 N. W. 742; *Cambell* v. *Motion Picture Machine Operators,* 151 Minn. 238, 186 N. W. 787.

Any actual loss suffered by the party aggrieved may be recovered if caused by the party through his contemptuous acts. *Davidson* v. *Munsey* and cases cited above.

From 1 Sutherland Damages, 4th Ed., 1916, Sec. 75, pp. 272, 273, we quote:

"Each party to a contract has a legal right to performance by the other according to its legal import and effect. Any default is a violation of that right. The injured party is entitled to a measure of

compensation which will place him in as good condition as if the contract had been fulfilled. * * *

"#76 Damages for Nonpayment of or Failure to Loan Money. On a contract for the mere payment of money the unpaid principal, together with the stipulated or, after maturity the lawful rate of interest is the measure of damages. It is the invariable measure of recovery in a creditor's action against his debtor. * * *" (See cases cited to support above proposition note 90.)

There is, however, another fact that must receive consideration from two standpoints before the court is justified in awarding damages. That is the ability of the party charged with contempt to perform. This is important not only from the standpoint of ordering a person to do the impossible (see sections 104-45-12, and 104-45-1 (notes) U. C. A. 1943), but, if he was, at the time of the order, unable to perform, his failure to comply with the order cannot be said to have caused the loss to the person for whose benefit the order was made. Thus if Mrs. Foreman in the present case had disposed of the bonds prior to the court order requiring her to deliver them to Mr. Foreman, the order should not have been made out; if made, its disobedience was not the cause of Mr. Foreman's loss. He would have lost his opportunity of acquiring those bonds by such order not by the disobedience, but by her previous disposal.

Throughout these proceedings both counsel and the court have been confused in their discussion of the amount of these bonds, at times there have been assumptions that Mrs. Foreman had all the bonds the court found she took at the time of the order directing her to deliver them. No doubt her silence and that of her counsel when they should have spoken aided in this assumption as well as some of her testimony. But, although the court finds in the findings of fact supporting the contempt proceedings that she had $3275 worth of bonds in her possession, he later in the final decree repudiates that amount—incidentally that repudiation takes the form of striking out $3275 and interlining in longhand the words which include "approximate amount of $3200.00." Obviously he was dis-

satisfied with the amount of $3275—we are justified in assuming he questioned the evidence to support it—otherwise he would not have stricken it from the typed part of the findings. Although $3275 is approximately $3200, the fact that he struck that amount clearly indicates it was not the amount he had in mind, if any he had, as being the sum which was approximately $3200. It could have been $2900, that amount that Mrs. Foreman maintains was on the envelope containing the bonds.

Considering this confusion in the record, the lower court's statements which we have quoted, and the lack of direct proof in the record that Mrs. Foreman had $3275 in bonds in her possession on February 15th, the day she was ordered to deliver the bonds, the judgment of $1518.75 must fall. That part of the judgment in contempt should be set aside.

We decided in the case of *Davidson* v. *Munsey*, 29 Utah 181, 80 P. 743, that the section of our Code above quoted gave a party damaged by the contempt of the adverse party a right to have judgment for his "costs and expenses" and that the word "expenses" covers the attorney fees the damaged party incurred. This item is quite different from the "Costs and necessary disbursements" referred to in Section 104-44-14, U. C. A. 1943, which provides for the way said "costs and necessary disbursements" must be assessed. We hold that Section 104-45-11 applies to this case and the "costs and expenses" referred to therein may be assessed by the judge in open court and made a part of his judgment there rendered.

The cost and expenses were assessed by the court at $50 attorney fees and $4.50 costs. Mr. Latimer, counsel for the defendant, testified that a reasonable sum for his fee was $50, and Mr. Barclay, counsel for the plaintiff, stated that he did not wish to examine Mr. Latimer. Since no evidence was presented contra upon this question we are of the opinion that as to the $50 attorney's fees and the $4.50 costs the judgment should stand.

As her final assignment of error plaintiff contends that the evidence does not support the findings of fact and con-

clusions of law and decree which provided that respondent should be awarded the bonds of approximate amount of $3200. It is a fact that the record on the question of amounts shows some conflicting testimony and a great deal of confusion mostly produced by counsel for the plaintiff. The amount of the bonds Mr. Foreman transferred into his and Mrs. Foreman's names first came up in the cross examination of Mrs. Foreman. Her testimony reads as follows:

"Q. All right. Do you know how much in money or how many bonds were transferred to the joint name of you and the defendant? A. Well, they were marked $2900.00, is what was marked on the bonds.

"Q. $2900.00? A. And I didn't count them. Well, then there was four or five hundred dollars, I didn't count the exact, but only what he said was in him and his mother's name, and he put that back and said he wouldn't change those, he would leave them there.

"Q. So there was $2900.00 in bonds that were taken at that time and transferred into your—for the purpose of transferring to your and his name? A. Yes, that is what he said it was and I didn't count it. * * *

"Q. You also went to the safety deposit box and took out some United States Government bonds made payable to both of you did you not? A. I did.

"Q. How much in value of bonds did you take out? A. Well, that was marked $2900.00 As I said, I didn't count them.

"Q. Have you counted them since? A. No. I didn't."

Additional information was solicited from Mr. Foreman when he was being examined by Mr. Barclay, counsel for the plaintiff. Mr. Foreman said:

"Q. All right. Now, on the same day, to wit, October 9, 1945, you changed the bonds, you say, at that time withdrew that. In whose name was the bonds? A. They were in my name and my first wife's name.

"Q. And how many were those? A. There was approximately forty-three; that is, forty-three twenty-five dollar bonds, and there was a thousand-dollar bond face value, and there was one one-hundred-dollar bond, two five hundred-dollar bonds and two fifty-dollar bonds.

"Q. They were all in you and your wife's name? A. Yes. * * *

"Q. Now, at the time you change them, did you have any bonds in you and your mother's name? A. Yes sir.

"Q. And how many of those were there? A. There were thirty-one bonds, twenty-five-dollar face value bonds.

"Q. In your name and your mother's name? A. Yes sir.

"Q. And on this same day to wit, October 9, 1945, you changed those into your name and Mrs. Foreman's name? A. No.

"Q. Did you ever change those? A. No."

The above quoted testimony is ample to show that there was substantial evidence to support a finding of the court that the amount of the bonds Mrs. Foreman took into her possession, which had belonged to Mr. Foreman prior to his marriage to her was $3275. The fact there there was conflict as to the exact amount does not preclude the court from finding in favor of one figure and against the other. The definiteness with which Mr. Foreman set down the number of bonds in each denomination alone might be sufficient to justify the court in accepting his version. We find the amount taken to have been $3275.00. In view of what has been previously said concerning that amount, we wish it understood that a finding of $3275 taken does not of necessity mean that Mrs. Foreman had that amount in her possession on the 15th of February, 1946.

On April 6, 1946, the judge of the lower court signed his findings of fact and conclusions of law and decree. In between the date of the signing and the signature were inserted the following words on both the findings and decree, "Nunc Pro Tunc as of February 15, 1946." Such an insertion purports to fix the time of rendition and entry of the judgment of that date. 34 C. J. 81 Sec. 222; 28 Words and Phrases Perm. Ed., p. 985. Plaintiff contends that the effect of these words is to make Mrs. Foreman subject to a double lien for the amount of the judgment granted defendant in the order convicting of contempt (in re Pearl Cooper Foreman) and the United States Government War Bonds in the approximate amount of $3200, par value, ordered returned to Mr. Foreman in the divorce decree. In view of the disposition hereinafter made of this issue, it is unnecessary to discuss the effect of such a nunc pro tunc entry.

Probably what really bothers counsel for Mrs. Foreman is that the bond issue had been finally determined—or, at least unless set aside by this court, was determined finally —by the judgment for $1518.75, awarded Mr. Foreman upon the contempt proceeding, and that to include it again in the final decree of divorce was in effect to award Mr. Foreman the bonds or their value twice. There is some merit to that argument, and we are of the opinion that if a valid judgment for the amount of the bonds had been awarded Mr. Foreman upon the contempt proceeding, then the matter should have been ended. To include it again in the decree of divorce as another judgment or order would be improper. Undoubtedly Mr. Foreman should not have his bonds and have their value too.

Mr. Foreman appeals from that part of the court's judgment which awards Mrs. Foreman $1800, in lieu of alimony and support money. Both the appellant and respondent cite as authority for their respective propositions, *Pinion* v. *Pinion*, 92 Utah 255, 67 P. 2d 265. We agree that the reasoning there applied is applicable here.

The marriage in the case at bar lasted approximately 68 days, both parties are in their early middle ages, each is coming out of the experience approximately as he or she went into it as far as health and job expectations are concerned. Both parties had substantial property to begin with and except for the $1800, awarded Mrs. Foreman, approximately $1400 of which came from the property Mr. Foreman had prior to his marriage, they are separated with their treasures intact. Mr. Foreman's monthly earnings are $425, gross and $365.57 net. Mrs. Foreman's $25. The court found that the conduct of the defendant, respondent, has caused the plaintiff great mental and physical distress and illness, and that her conduct has not caused him any distress. The parties litigated fully the question of fault in the case at bar—a material distinction between the case at bar and *Pinion* v. *Pinion* (cited above).

And as we state in *Pinion* v. *Pinion*, 92 Utah at page 260, 67 P. 2d at page 267,

"In cases where her health has suffered or his conduct has been such as to justify alimony for a period may be granted."

Under the reasoning of the above cited case if alimony for a period is proper a lump sum award could be properly made.

At the close of the main trial of this case the judge after deciding to award the divorce to the plaintiff Mrs. Foreman had this to say about the property settlement:

"The whole fight is money matter. It was money from the beginning. The wedding was conceived as a money matter. It is a grab to see what is going to come out of it, in my opinion.

"As far as I am concerned, Mrs. Foreman has $1800.00, in cash. If she doesn't have the eighteen hundred, the fraud that was perpetrated upon the court back on November 20, ought to land somebody in jail. I am going to let Judge Bronson determine that. He is the one that made the order.

"As far as I am concerned, she has $1800.00, in cash, and I think that would well pay the lady for such heart balm as she might be in need of, and that would avoid the necessity for my going into that.

"It will be an eighteen-hundred-dollar lesson to Mr. Foreman to be careful and more fastidious in his taste hereafter if he didn't like the taste of this marriage, if he were plucked of this $1800,00, and I suppose it is only fourteen hundred anyway. She put four or five hundred dollars in, as I remember it. Did she take her bonds in addition to the eighteen hundred?   *   *   *

"The Court: I have the further matter—the lady claims she doesn't have much of that money; and rather than fuss around with that, fuss around with perjury, fuss around with contempt, I have trouble enough trying to satisfy these divorce desires without going into those collateral matters, and that is one reason why I think I should leave them as they are now."

It would seem from a reading of the above statements that what the court was attempting to do here was compensate Mrs. Foreman for her suffering of the ■ pangs of unrequited love—heart balm—and teach Mr. Foreman a lesson in marriage. Neither task is properly within the issues of a divorce case such as this.

In divorce cases this court on appeal may try the case de novo on the record such as is done in equity cases generally. The trial de novo which is meant is not an original hearing such as would be the case of an appeal from a justice court to a district court. The trial de novo ▉ is founded upon the record made in the lower tribunal. *Denver & R. G. W. R. Co.* v. *Public Service Comm.*, 98 Utah 431, 100 P. 2d 552. The record which this court gets from the trial court must be considered in all its ramifications, and our decision the result of such considerations.

We have in this case facts recited in the court's signed findings of fact that would support the award made to Mrs. Foreman. We also have in the transcript of the proceedings the language quoted which shows a failure to consider the issues presented. We have held in a number of cases that while the opinion of the trial judge amounts to no judicial determination of the issues we may look to his opinion to determine his reasons for his decision. *Utah Commercial & Savings Bank* v. *Fox,* 44 Utah 323, 140 P. 660; *Miller* v. *Marks,* 46 Utah 257, 148 P. 412; *Winn* v. *Romney,* 63 Utah 120, 222 P. 709 (on application for rehearing); *Wasatch Oil Refining Co.* v. *Wade, Judge,* 92 Utah 50, 63 P. 2d 1070. In the case at bar the reasons the judge recited in open court for his decision are not consistent with his findings of fact, conclusions of law and decree. They cast doubt upon the foundation for those determinations. It is a simple matter to recite or write sufficient facts to support a decision once the decision is made, but the trial court's process of determination to be a proper exercise of judgment for founding a question upon the merits should show an attempt to decide the issues of the case as presented, and should not be founded upon extraneous matters. We feel that this court and the litigants are entitled to such a consideration of the case by the lower court. To hold otherwise would burden this court with the necessity of determining all the issues as an original matter and without benefit of personal contact with the witnesses.

In view of the uncertainty in the record as to the present status of Mrs. Foreman's possession of $1800 cash and $3275 worth of bonds, this court is unable to make a final determination of the case and it will have to be returned for rehearing and reconsideration of the issues of property settlement. In view of the peculiar circumstances of this case, this court is of the opinion that a proper and just settlement of these difficulties could be accomplished by an effort to place the parties as nearly as possible in the position they were in immediately prior to the time they established their joint accounts and joint ownership in bonds, and if for any reason either party cannot be placed fully in that status, she or he should be given credit in the form of a judgment for the shortage. In consideration of this matter the court should allow Mrs. Foreman a reasonable sum of money per month for such length of time as the court believes will enable her to readjust her life to her former position of self-support. A decision of the matter on this basis will obviate any necessity for any further attempt to award damages as a part of the contempt proceedings, as such shortage in the bonds if it develops upon further hearing may be covered by such judgment in the final decree.

Nothing in this opinion shall be construed so as to deprive the lower court of the right of reducing the jail sentence imposed upon Mrs. Foreman, if he believes it the just thing to do.

The judgments and decree of the lower court are set aside to the extent herein indicated and the case is returned for rehearing upon those matters. Each party to bear his own costs.

McDONOUGH and WADE, JJ., concur.

LARSON, Chief Justice (concurring-dissenting).

I concur in most of what is said in the prevailing opinion, but must dissent from some of the conclusions reached. Perhaps I can best set forth my position by indicating the

points on which I disagree. I agree that an order made in open court and entered in the minutes is an order upon which contempt proceedings for disobedience to such order may be based if the contents of the order was properly brought to the attention of the party bound thereby. However, the statement in the prevailing opinion:

"Since we hold that the order in the form given by the court was a valid, lawful order it follows that defendant's disobedience is a contempt of court,"

is too broad. To be a contempt disobedience to an order must be wilful and contumacious; the party must have the ability to obey the order and intentionally or deliberately fail to do so. Then the opinion says:

"theoretically at least, Mrs. Foreman was in contempt of court."

It then says that she delivered the bonds to the office of her counsel and that he is in contempt for not delivering them to defendant. If she were to personally deliver them to defendant or his counsel, then Barclay might be guilty of a breach of faith or trust to her, but he would hardly be guilty of contempt of the court's order to her. If on the other hand, she was within her rights in delivering them to Barclay for delivery, and it was he who was responsible for non-delivery, as per the court order, then Mrs. Foreman could not well be held in contempt. In view of the record showing that Barclay told the court that *he*, Barclay, could not himself make any delivery of the bonds on the 15th, and the court replied:

"I will order the plaintiff to turn the bonds over today. I don't care who does it. * * * I don't see why in ten minutes she can't have the bonds in her hands and in the hands of this gentleman [evidently defendant],"

the court evidently intended Mrs. Foreman should be personally responsible for the delivery of the bonds. However to put her in contempt the court must find that *she* wilfully and contumaciously failed to deliver them. In view

of the position taken by the trial court with reference to Barclay, and the intimations and implications of the prevailing opinions here, I have difficulty in seeing how Mrs. Foreman can be said to have been wilful and contumacious in failing to deliver the bonds. For this reason as well as those given by Mr. Justice PRATT I agree the damage judgment of $1518.75 must fail. I also think the contempt judgment and sentence must fail. As to all other matters I concur.

WOLFE, Justice (concurring-dissenting).

I concur outright on all points except as to Mrs. Foreman's contempt. On that point I concur in the result for the reasons hereinafter stated.

The main opinion interprets the oral order to Mrs. Foreman regarding the delivery of bonds to Mr. Latimer as an order to deliver the bonds *she then had in her possession which originally belonged to Mr. Foreman.*

The quotation from the transcript in the main opinion would indicate the order was as interpreted but also that the court believed, when he made the order for her to deliver the bonds, that she had bonds of about $3200 face value in her possession which had originally belonged to Mr. Foreman. The trial judge said (emphases mine):

"The plaintiff will be directed to return to the defendant the bonds she *now* holds, $3200.00—"

and

"All bonds that she *has* that the defendant had originally"

Mrs. Foreman and her attorney had led the court to believe that she had not disposed of any of the bonds and that on February 15, 1946, when the order was made, she still had in her possession all of the bonds she took from the safety deposit box on November 16, 1945. Thinking that she still had all the bonds, the trial judge ordered her to return the bonds she then had, he being under the impression that such order would recover from her all the bonds she took.

That the intention of the judge was to order delivery of the bonds taken which had originally belonged to Mr. Foreman is shown by the fact that both the court and Mr. Latimer in the discussion quoted in the main opinion mention the amount of the bonds as being $3200, which in round figures is the sum it is claimed she took from the box. The minute entry for February 15, 1946, reads in part as follows:

"defendant being awarded all war bonds originally owned by him, the plaintiff to return them to defendant February 15, 1946."

Further, at the contempt hearing on February 20, 1946, Mrs. Foreman's entire defense was that she did not understand that she was ordered to deliver *any* bonds. Such a defense is so inconsistent with her actions, the transcript, and the minute entry that it is incredible that it was proposed. On February 20th it was not contended that she delivered all the bonds she had on the 15th and hence was only "technically" in contempt in that she delivered them to Mr. Barclay instead of to Mr. Latimer.

Considering the record as a whole, it seems clear that the order to Mrs. Foreman was, as indicated in the minute entry, to return the bonds which had originally belonged to Mr. Foreman and which she had *taken from the safety deposit box* and that Mrs. Foreman and her attorney clearly understood that to be the order. Mrs. Foreman disobeyed that order by failing to return *all* the bonds, *or,* if she was unable to return all of them, by failing to make any showing when she was questioned on February 20th as to why she did not return all of them, as well as by not returning them to the person designated in the order.

However, a court order to be the basis of a finding of guilty of contempt for disobedience thereof must be clear and unambiguous. The fact that the members of this court do not agree on the meaning of the order here involved as to what bonds the judge had reference to indicates that the order was not sufficiently clear on that point to support the finding of guilty of contempt for disobedience of that

element of the order or to base a judgment for damages for disobedience of that element of the order. I, therefore, concur with the result.