Denise Evans KANZEE, Plaintiff and Respondent,

v.

Michael KANZEE, Defendant and Appellant.

No. 17918.

Supreme Court of Utah.

Jan. 20, 1983.

Shelden R. Carter, Provo, for defendant and appellant.

Robert W. Adkins, Coalville, for plaintiff and respondent.

DURHAM, Justice:

The defendant appeals from an order of the district court denying his Motion for Relief from Judgment and committing him to the Utah County Jail until he complies with a prior order of the court. This case arises because of the defendant's failure to comply with the mandates of the trial court's decree of divorce. We affirm.

On May 26, 1978, the parties entered into a property settlement agreement which was incorporated into the divorce decree dated September 5, 1978. As part of the settlement agreement, the plaintiff was awarded the residence and the defendant agreed to pay the indebtedness on the home, then around $39,000, "within a reasonable time, not to exceed six months." The decree ordered the defendant to pay the mortgages by November 27, 1978, six months after the settlement agreement was signed.

On March 23, 1979, the plaintiff filed an affidavit in which she stated that the defendant had refused to pay the indebtedness and to sign a deed conveying the house to her. An Order to Show Cause was issued, but the matter was continued several times until July 20, 1979, when the defendant countered with his own Order to Show Cause. The defendant's order sought a modification of the divorce decree, based on changed circumstances, to allow him to pay the mortgages on a monthly basis. These two matters came up for hearing on October 5, 1979. The trial court continued that hearing for six months and ordered the defendant to keep the monthly house payments current in the meantime. When the Orders to Show Cause came up for hearing again, the plaintiff filed an affidavit in which she stated (1) that at the time of the divorce the defendant was the beneficiary of two trusts containing assets worth over $400,000, and that she had agreed not to claim any part of the defendant's trust funds in exchange for having a mortgage-free home; (2) that since the divorce, the defendant had withdrawn approximately $200,000 from his trust funds, and had purchased a house for himself, paying $85,000 in cash; and (3) that since the previous hearing on the Orders to Show Cause, the defendant had expended $32,500 speculating in gold and silver and had also purchased an interest in an apartment in Denver for $25,000. The plaintiff filed the trustee's "summary of investments" itemizing the trusts' assets at the time of the divorce.

The Orders to Show Cause were again heard on April 24, 1980, at which time the parties were each sworn and examined. According to the court's minute entry, the defendant testified that he did not want to refinance the mortgages while interest rates were so high. The court apparently had doubts about its jurisdiction to modify the decree on the defendant's proffered change of circumstances, and therefore requested memoranda from counsel by April 30. On May 5, 1980, the court denied the defendant's Order to Show Cause and found the defendant in contempt of court, stating that the defendant might purge himself of the contempt by complying with the divorce decree. On September 4, 1980, the court signed a formal order of contempt, finding that the defendant had failed to pay the mortgages although he "was, and is now, able to pay such mortgages." By this Order, the court committed the defendant to jail until such time as he purged himself of the contempt by paying the mortgages.

The defendant's counsel withdrew. New counsel immediately filed an objection to the issuance of a warrant of commitment and filed a motion for relief from the divorce decree under Rule 60(b)(7), together with an affidavit by the defendant. That affidavit stated that the defendant did not have adequate counsel at the time of the property settlement agreement and, as a result, he allowed the plaintiff to be awarded all of the marital property. The relief from judgment requested by the defendant was that he be allowed to pay the mortgages on a monthly basis. The plaintiff filed an opposing memorandum and a hearing was scheduled for April 17, 1981. The court continued the matter for two months to give the defendant time to pay the mortgages. When the matter came up for a hearing in June, the court again continued the matter to July to allow the defendant still more time to pay the mortgages. When the matter came up for a hearing in July, the court again stayed the order of commitment for another month so that the defendant could pay the mortgages, but this time denied a new motion by the defendant for relief from the judgment. A formal order was signed on July 27, 1981, denying the defendant's new motion, and committing him to jail for contempt, but staying that commitment to August 28, 1981. This is the order from which the defendant now appeals.

The defendant claims that the trial court erred in denying his motion for relief from judgment under Rule 60(b) of the Utah Rules of Civil Procedure, subsections (1) ("mistake or excusable neglect"), (3) ("fraud or misrepresentation"), or (7) ("any other reasons justifying relief"). He also argues that the trial court's order in July of 1981 of contempt and commitment was not supported by evidence, written findings of fact, or any finding that the defendant had the ability to perform at the time of the order's issuance.

As to the defendant's first claim, he is not entitled to relief under Rule 60(b)(1) or (3) because he did not file his motion for relief within three months of the entry of the decree as required by the rule. *See, e.g., Laub v. South Central Utah Telephone Ass'n Inc.,* Utah, 657 P.2d 1304 (1982). Moreover, his grounds for relief are either misrepresentation or excusable neglect (he claims he was unrepresented by counsel and believed he could do no better than the settlement agreement if he contested the divorce) and he is therefore not entitled to use Rule 60(b)(7) to circumvent the three-month limitation. *See, e.g., id.; Pitts v. McLachlan,* Utah, 567 P.2d 171 (1977).

The defendant's second claim is likewise without merit. He claims in his brief that "no written findings of fact or judgment supported by clear and convincing proof" show that he had the present ability to perform as ordered by the trial court. However, in the original adjudication of contempt, on which the final order of commitment was based, the trial court said:

> [T]he defendant was ordered to pay all of the debts on said home by November 27, 1978, and the defendant has wholly failed and neglected to pay the two mortgages on the home in the approximate sum of $36,000, although the defendant was, and is now, able to pay such mortgages....

That specific finding regarding the defendant's ability to perform provides ample support for the order of contempt and commitment. The defendant is confused in assuming that the ultimate order in July of 1981 imposing commitment required a new finding of his ability to perform. A reading of the July, 1981 order makes it clear that it is merely implementing the judgment entered in 1980 and that it rests on the findings made at that time. The defendant may not escape the consequences of his 1980 contempt merely because of the court's generosity in affording him repeated stays of execution in order to encourage him to comply and purge himself of the contempt. The issue of his ability to perform as it relates to this appeal pertains only to the 1980 order which was merely being implemented by the 1981 order. The defendant made no claim before the trial court or here on appeal that his circumstances have changed *since* September of 1980 such that

he *now* has no ability to perform. Should such a claim be made, the defendant would of course be entitled to a hearing thereon. As this Court stated in *Bradshaw v. Kershaw,* Utah, 627 P.2d 528 (1981):

> In contrast, when the proposed sanction is coercive imprisonment, the defense of impossibility of performance as of the time the sanction is to be imposed would always be available, without regard to how or by whom the condition of impossibility occurred. It is obviously "repugnant to reason and futile" to try to coerce an act that the contemnor has no present ability to perform. Our statute recognizes this by specifically preserving the impossibility defense as to coercive imprisonment in language ("an act . . . yet in the power of the person to perform," 78–32–12) that is absent from the statutes dealing with punishment (78–32–10) and indemnification (78–32–11). Consequently, the defense of impossibility is uniformly held available to this type of sanction. In fact, the sanction cannot be imposed without an affirmative finding of present ability to comply.

*Id.* at 531 (citations omitted). *Accord Marshall v. Marshall,* 191 Colo. 165, 551 P.2d 709 (1976). The defendant has not advanced any claim that his circumstances have changed since the 1980 order which render him incapable of paying the mortgage. Therefore, that issue is not now before us on this appeal.

The judgment of the trial court is affirmed. Costs awarded to the plaintiff.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.