[Civil No. 3464. Filed December 18, 1934.]

[39 Pac. (2d) 621.]

SAM BARRETT, Appellant, v. ROY BARRETT, Appellee.

Messrs. Hayes & Allee, for Appellant.

Mr. L. C. McNabb and Mr. Terrence A. Carson, for Appellee.

ROSS, C. J.—This proceeding involves the right of a stranger, who has voluntarily furnished necessaries to minor children in the legal custody of their mother in pursuance of an order in a divorce decree, to maintain an action against the father for his expenditures in that behalf.

The complaint, in substance, alleges the following facts: That defendant, Sam Barrett, and Olive Barrett were married November 7, 1907; that the issue of said marriage was three children, to wit, Roy, May and Lloyd Chester Barrett, whose ages at the time of bringing this action were, respectively, 24, 18 and 16 years; that in 1915 the defendant, wilfully and without cause, deserted his wife, Olive Barrett, and abandoned said children, who at that time were all minors; that on said ground she obtained a divorce from defendant and was awarded the custody of the children on December 8, 1917; that since that date defendant has failed, refused and

neglected to provide the necessaries of life for the minor children; that the mother, Olive, has become physically unable to work and make a living and to furnish the children with the bare necessities of life; that she has been an invalid and under a doctor's care for several years; that the plaintiff (Roy Barrett) after he arrived at majority, and for the three years just prior to the filing of his complaint (May, 1933), "in order to prevent said minor children (May and Lloyd Chester) from being in need and want of food, clothing, medical care and education, furnished . . . all the necessities . . . for said minor children," at an expenditure of $50 per month for each of them, because defendant failed and refused to furnish such necessaries; that defendant knew plaintiff was expending money for such purposes; that plaintiff has expended in the last three years for the support of said minors $3,600, for which defendant is indebted to him.

The defendant demurred generally to the complaint, and answered putting in issue practically all of its allegations, except those of marriage, the parentage of the children and the infancy of May and Lloyd Chester, and pleaded in the nature of a bar to the action the terms of the decree of divorce, which he alleges awarded the custody of the children to their mother, Olive Barrett, and the sum of $1,000 and certain items of personal property, in lieu of all other or further provision for the support of the mother and children, and absolved defendant from the duty to support his minor children; that during the year 1918 said Olive Barrett applied to the court for a modification of said decree to require defendant to pay plaintiff a monthly sum for the support and maintenance of the children, and that the court after

a hearing of said application denied it, and that such order and the decree stand unmodified.

The demurrer was overruled and trial had before the court, without a jury, resulting in a judgment for plaintiff in the sum of $1,779.

The court's ruling on the demurrer is assigned as error, as is also the court's action in ignoring the decree in the divorce proceeding, it being contended that the award of the custody of the children to their mother, and an allowance for their maintenance, carried with it the duty of support, and that, in order to fix any duty on defendant to support the children, it was necessary to secure a modification of the judgment casting the duty on him. It is also assigned "that no contract or agreement, express or implied, as between the plaintiff and defendant, whereby the defendant agreed to reimburse the plaintiff for his alleged expenditures was shown."

The defendant under these assignments presents four propositions of law, in the form of interrogatories, as follows:

"(1) Where a decree of divorce has been granted to the wife by reason of the fault of the husband, whereby the custody of minor children are (is) awarded to the wife and the wife is expressly charged with the duty of supporting and providing for such children, may a third party, with knowledge of the facts and in the absence of a contract understanding with the husband for reimbursement, maintain an action against the husband for moneys advanced toward the support and education of such minor children?

"(2) Does such decree fix the status and obligations of the parties until set aside or modified, assuming the children continue to reside with the mother?

"(3) May the mother in such case have a legal action and claim against the father for past support provided by her for the children?

"(4) May a stranger to the record in the absence of an agreement for reimbursement have a legal claim and demand against the father for moneys contributed or supplies voluntarily furnished the minor children?"

As the answer to the first proposition, and indeed all of them, depends upon the facts and circumstances, we think it well to give a summary of the court's findings.

The court found that the minor children, during the time for which plaintiff sued defendant for their support, were in the custody of their mother; that the mother was during that period, and had been for some time prior thereto, indigent and incapacitated by physical infirmity from providing anything for the support of the minor children; that such children had no means of support other than such as plaintiff furnished, except during the months of February and March of 1933, when the plaintiff was financially unable to support the minors, the defendant contributed some money and provisions; that plaintiff prior to furnishing the necessaries to said minors informed the defendant of the indigence of the mother and of the children and requested of him the discharge of the duty of supporting them; that, the defendant failing to act, plaintiff assumed the duty of providing the children with the necessaries of life.

We add that, contrary to the allegations of the complaint that the divorce was obtained on the grounds of desertion, the record shows that it was asked for and granted upon the ground of cruelty. But no point is made of this variance.

While the legislature has in many respects provided for the protection of minor children, it has failed by any direct or positive legislation to define

specifically the duties of parents with respect to the support of their minor children. We must therefore rely largely upon the rule of the common law in fixing such responsibility. The courts, especially those of an early date, are not in agreement as to the rule. They all agree, however, that there is a moral and natural obligation on the part of the parent to support his minor children, but it was held by some of them that there was no legal obligation or method of enforcing the duty. The reasons given for the rule of nonliability we need not state, for we believe the enlightened legal concept of the present day is that parentage in and of itself imposes a legal duty of support to minor children. In *Doughty* v. *Engler*, 112 Kan. 583, 211 Pac. 619, 30 A. L. R. 1065, 1067, 1068, the court, in speaking of such duty, says:

"By the great weight of judicial opinion in this country parents are under a legal duty, regardless of any statute, to maintain their legitimate minor children (20 R. C. L. 622), the obligation being sometimes spoken of as one under the common law and sometimes as a matter of natural right and justice, and often accepted as a matter of course without the assignment of any reason. Chancellor Kent says: 'The wants and weaknesses of children render it necessary that some person maintain them, and the voice of nature has pointed out the parent as the most fit and proper person. The laws and customs of all nations have enforced this plain precept of universal law.' Kent's Comm. 189.

"Blackstone begins his discussion of the duties of parents to legitimate children thus: 'The duty of parents to provide for the maintenance of their children is a principle of natural law; an obligation, says Puffendorf, laid on them not only by nature herself, but by their own proper act, in bringing them into the world; for they would be in the highest manner injurious to their issue, if they only gave their children life that they might afterwards see them perish. By begetting them, therefore, they have entered into a

voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved. And thus the children will have the perfect right of receiving maintenance from the parents.' 1 Blackstone's Commentaries, 447.

"A sufficient reason for holding parents to be under a legal obligation, apart from any statute, to support their legitimate child while it is too young to care for itself, is that the liability ought to attach as a part of their responsibility for having brought it into being."

We think the legislature has assumed the existence of this rule in this state. In section 273, Revised Code of 1928, legitimizing all children, we find this statement:

"Every child is the legitimate child of its natural parents and is entitled to support and education as if born in lawful wedlock."

This would not give support and education to a child born out of wedlock unless it be held the law secures support and education to a child born in wedlock.

Section 4635, Id., makes it a felony for a parent wilfully to omit, without lawful excuse, to furnish necessary food, clothing, shelter or medical attendance for his or her minor child. This provision presupposes the existence of a legal duty on the part of the parent to support his minor child and is complemental to such legal duty. We do not mean to say that a legal duty on the part of the parent to support his minor child exists simply because the legislature assumed its existence, but that we, in adopting such rule, feel that we are, not only justified by excellent judicial opinion, but are following a declared policy by the legislative branch of the government.

The provisions in the decree of divorce awarding the custody of the children to the mother and placing

the duty of support exclusively on her are binding, as between the father and mother, until by a direct proceeding modified, but they do not extend to the minor children. The court under the statutes retains jurisdiction to amend, change or alter any provision of the decree respecting the care, custody or maintenance of the children of the parties, as the circumstances of the parents and the welfare of the children may require. Section 2188, Id. If this action were by the mother, it could well be said that her remedy would be to apply for a modification of the decree in the divorce proceeding. But neither the statute nor the decree thereunder is the full measure of the duty of the parent to his minor children. If it were, the children's right to support could not be enforced for lack of a remedy, provided the parent failed to act.

Considerably altering its attitude on the effect of a decree of divorce upon the duty of the parent to support his minor child, the Supreme Court of California, in *Southern California Edison Co.* v. *Industrial Acc. Com.*, 92 Cal. App. 355, 268 Pac. 415, 416, said:

"Whatever may be said of earlier decisions, it now seems to be the settled rule of law in this state that by no act, conduct, or arrangement of whatever sort may a parent shift from his shoulders the legal responsibility and moral duty to support his minor child. It is an absolute, inalienable right enjoyed by the child, which no form of contract between the parents, nor alteration of the domestic status of either of them, may affect. . . . Substantially the authorities dealing with such a situation are reviewed in the case of *Federal Mutual Liability Ins. Co.* v. *Industrial Acc. Com.*, 195 Cal. 283, 233 Pac. 335. It is there held that a father, from whom his wife has secured a decree of divorce, may not, by reason of any contractual arrangement between the parties, escape his legal, bounden duty to support the minor

child of the marriage." See, also, *Dixon* v. *Dixon,* 216 Cal. 440, 14 Pac. (2d) 497.

This court has said:

" . . . The father cannot make a valid and irrevocable contract which relieves him from the legal obligation to maintain, support, and educate his minor child." *Harper* v. *Tipple,* 21 Ariz. 41, 45, 184 Pac. 1005, 1007.

Some of the courts have held the right of custody and the earnings of the minor and the duty to support are correlative, and that, where the mother has been given the custody of a child, the father is relieved from the duty of support. This rule, as between the parents, may be all right providing its operation does not deprive the child of support. If the one into whose custody the child has been given is financially able to furnish the support, well and good, but, where she or he has become indigent and physically unable to work and can no longer take care of the child's needs, the question is, Shall the burden of its care be permitted to become a public charge or the subject of private charity, or fall where it naturally belongs, on the parent? As is said in *Alvey* v. *Hartwig,* 106 Md. 254, 67 Atl. 132, 135, 14 Ann. Cas. 250, 11 L. R. A. (N. S.) 678:

"There may be, and doubtless are, many cases where the right to the custody and services of the children are taken away from the father because of his misconduct. His natural right to this custody and these services is forfeited by his misconduct, and surely, if his misconduct works a forfeiture of his rights to custody and earnings, he ought not to be absolved from his natural and usual duty of supporting them. To allow it to bring about any such result would simply be allowing the father to take advantage of his own wrong, for all a father would have to do to avoid his natural obligation to his children would be to desert his family, conduct himself in such

a way as to show that he is an unfit person to have the custody of his children, and then, when on account of his own wrongful doings and unfitness, the court takes the custody of the children away from him, and awards it to the mother, it relieves him of the obligation which the law of nature and the law of the land places upon him."

The judgment of divorce in this case was obtained by the wife on account of the wrongful conduct of the defendant, it being recited in said judgment "that the defendant has treated plaintiff cruelly and committed outrages and excesses upon and toward the plaintiff." Quoting from *Gibson* v. *Gibson,* 18 Wash. 489, 51 Pac. 1041, 1042, 40 L. R. A. 587:

"It violates our sense of justice to allow a father to plead his own wrong as an excuse for relieving himself from an obligation. Presumably the custody of the child is taken from him, because he is not worthy of its care and custody; and this doctrine in effect releases from an obligation the unworthy parent, and imposes an additional burden upon the worthy one."

Still considering defendant's first proposition, we do not see how plaintiff's knowledge of the decree of divorce and its terms concerning the property rights and the custody of the children can in any way deprive him, if the other facts justified his giving support to the minors, of the right to maintain this action. His knowledge, at most, was that the terms of such decree were binding upon the parents and did not in any manner dispense with their natural, moral or legal duties to the children.

What we have said disposes of defendant's first three propositions.

We will now consider his fourth proposition. It is clear from the record that defendant did not expressly agree with plaintiff to reimburse him for his

expenditures in behalf of the minors. It is also true that the minors, because of their infancy, could not contract in behalf of their father that the latter would repay plaintiff. If the defendant is to be held liable, it must be on some other principle of law, and we think that principle is well stated in the early case of *Van Valkinburgh* v. *Watson,* 13 Johns. (N. Y.) 480, 7 Am. Dec. 395, as follows:

"A parent is under a natural obligation to furnish necessaries for his wife and children; and if the parent neglect that duty, any other person who supplies such necessaries is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of the parent."

In *Maschauer* v. *Downs,* 53 App. D. C. 142, 289 Fed. 540, 542, 32 A. L. R. 1461, 1465, it was said:

"At one time in the remote past it was held that there was no legal obligation resting upon a father to support his children. *Hunt* v. *Thompson,* 3 Scam. (Ill.) 179, 36 Am. Dec. 538; *Freeman* v. *Robinson,* 38 N. J. Law 383, 20 Am. Rep. 399. But that view has long since been abandoned. *Dunbar* v. *Dunbar,* 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084; *Porter* v. *Powell,* 79 Iowa 151, 44 N. W. 295, 18 Am. St. Rep. 353, 7 L. R. A. 176 and note. The authorities, however, are not agreed as to the principle upon which a father can be held liable. The best reasoned decisions favor the theory that, if he leaves his children destitute, he confers on anyone who finds them in that condition an agency to give them what they need. 20 R. C. L. 624; *Van Valkinburgh* v. *Watson,* 13 Johns. (N. Y.) 480, 7 Am. Dec. 395; *Owen* v. *White,* 5 Port. (Ala.) 435, 30 Am. Dec. 572; *Porter* v. *Powell, supra; Finn* v. *Adams,* 138 Mich. 258, 101 N. W. 533, 4 Ann. Cas. 1186."

We think these authorities, although there are many others along the same line, are sufficient to show that defendant is liable to plaintiff for his expenditures upon an implied contract for the neces-

saries furnished defendant's minor children. There is no suggestion that the expenditures were not made for necessaries, and we do not go into that question.

We think the complaint stated a cause of action, and that, under the facts found, plaintiff was entitled to recover.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.