**STATE DIVISION OF FAMILY SERVICES
and JoAnn Lorraine Clark et al.,
Plaintiffs and Appellants,**

v.

**Mark Thomas CLARK et al., Defendants
and Respondents.**

**Nos. 14132–14134.**

Supreme Court of Utah.

Sept. 17, 1976.

Vernon B. Romney, Atty. Gen., Frank V. Nelson, Stephen G. Schwendiman, Asst. Attys. Gen., Salt Lake City, Robert L. Newey, Weber County Atty., Ernest W. Jones, Asst. Weber County Atty., Ogden, for appellants.

Martin W. Custen, of Weber County Legal Aid Services, Ogden, for respondents.

CROCKETT, Justice.

Three actions are combined here, in each of which the State Division of Family Services (herein called Family Services) joined with mothers of dependent children, who had been receiving support from Family Services, to initiate the actions against the defendant husband and father for reimbursement for the support that had been furnished their children.[1] The defense asserted with which we are concerned here is stated by the defendants that:

> . . . the plaintiff (Family Services) has only those same rights as plaintiff obligee (the mother) has for securing reimbursement from the defendant . . . [and is] . . . not entitled to a judgment for a sum certain without first obtaining a court order specifying the amount of monthly support.

The district court sustained that contention and granted summary judgment in favor of the defendant husband and father in each case. Plaintiffs appeal.

1. See Authorization in Sec. 78–45–9, U.C.A. 1953 (Pocket Supp.).

The defendants do not deny that they have a duty to support their children. Their argument in support of the defense above stated is: that the amount of their liability for support furnished their children is correlated to their ability to pay; and that because there has been no previous adjudication as to the amount each should pay, there is no foundation for entering the judgment sought against them, regardless of any amounts Family Services may have expended for the support of their children.

Defendants' argument fails to take into account the difference between the right of one who has furnished support to a child to have reimbursement,[2] as distinguished from an adjudication of the amount a father should pay for the current and future support of his children.[3] The complaints filed in each of these cases deal only with the former. They allege stated amounts that have been expended for the support and maintenance of the children of each of the defendants and ask reimbursement therefor; and that is the only issue we are dealing with in this case.

■ The universally recognized rule is that according to the common consent and customs of mankind one of the implied promises in the marriage contract is to support any children that may be born into the family. Even more fundamentally, the duty of parents to support their children derives from natural law. This has been recognized from the earliest times as a proposition of such incontestable correctness that it is neither subject to doubt nor in need of explanatory justification; and this is equally true of the corresponding right of a child to receive the support from his father.[4]

This is supported by a plethora of authority, which includes that sanctified source of the common law, Blackstone:

> The duty of parents to provide for the maintenance of their children is a principle of natural law; an obligation, says Puffendorf, laid on them not only by nature herself, but by their own proper act, in bringing them into the world; for they would be in the highest manner injurious to their issue, if they only gave their children life that they might afterwards see them perish. By begetting them, therefore, they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved.[5]

A similar expression was made by the greatly respected Chancellor Kent:

> The wants and weaknesses of children render it necessary that some person maintain them, and the voice of nature has pointed out the parent as the most fit and proper person. The laws and customs of all nations have enforced this plain precept of universal law.[6]

■ A necessary concomitant of the continuing and inalienable duty of parents to support their children is that if a child is left in need and a third party comes to the rescue and furnishes support, the latter is subrogated to the child's right and may obtain reimbursement therefor.[7] The right to reimbursement for one who furnishes that

---

2. See cases supporting the right of a third person to reimbursement from a parent for reasonable and necessary support furnished: *Stafford v. Field,* 70 Idaho 331, 218 P.2d 338; *Rogers v. Rogers,* 93 Kan. 114, 143 P. 410; *West v. West,* 114 Okl. 279, 246 P. 599.

3. See *Price v. Price,* 4 Utah 2d 153, 289 P. 2d 1044, wherein this distinction is noted.

4. See *Hulse v. Hulse,* 111 Utah 193, 176 P. 2d 875; *Rees v. Archibald,* 6 Utah 2d 264, 311 P.2d 788 and cases therein cited; also See Sec. 30–2–9, U.C.A.1953, which makes both husband and wife responsible for the expenses of the family and the education of the children; and Sec. 78–45–3 which provides that: Every man shall support his wife and his child.

5. Blackstone's Commentaries, 447.

6. Kent's Comm., Vol. II, p. 196.

7. The authorities generally support the proposition that a father remains liable for necessities furnished to his children by a third party, and may not through agreements or conduct, relieve himself of that obligation. See 67 C.J.S. Parent & Child § 16; 59 Am. Jur.2d Parent & Child, Sec. 85; and Annot. 69 A.L.R.2d 203.

support when the father fails is set forth in what we regard as an excellent opinion by the late Chief Justice Ross of Arizona in the case of *Barrett v. Barrett*.[8] In pointing out that a father cannot escape the responsibility to support the children he has brought into the world, that jurist quotes the venerable authorities just referred to; and further states, that inasmuch as the father cannot do so by voluntary attempts, there certainly should be no reason why he should be relieved of that obligation by his misdeeds. Even if his misconduct may have worked a forfeiture of his right to custody, he should not gain any advantage from his own wrong, nor should it adversely affect the right of the child to support.[9]

It is appropriate to observe that the principles just stated are not intended to provide a means of oppression or harassment of a parent who is attempting to support his child, nor to pressure him into furnishing luxuries or frivolities, nor yet to reward an intermeddler.[10] The purpose is to assist in assuring that help will not be withheld from children in necessitous circumstances. Nevertheless they should be furnished only those things which are reasonable and necessary, and this may sometimes vary according to the appropriate standard of living. There is no suggestion of any departure from that standard in these cases.

On the basis of what has been said herein it is our conclusion that the trial court was in error in dismissing these actions; and that the plaintiffs, Division of Family Services, (and the mothers joined as plaintiffs) are entitled to a judgment against each defendant for the money that has been reasonably and necessarily expended in support of his children.[11]

Remanded for further proceedings consistent wtih this decision. No costs awarded.

ELLETT, J., concurs.

HENRIOD, Chief Justice (concurring in the result).

I concur in the result as it applies to this case and the statutory authority to sustain it. However, I would be disinclined to subscribe to the general proposition, as a principle, that as a concomitant of parental duty to support a child, "if a child is left destitute and a third party comes to the rescue and furnishes support, the latter is subrogated to the child's right and may obtain reimbursement therefor."[1]

Such a principle easily could lead to inequities, in my opinion, and possibly open the door to officious, unsolicited meddling by relatives, who, by seizing an opportunity during periods of economic adversity or distress, could preserve, via the vehicle of a judgment, carrying with it an 8 per cent bonus, a club continually to be wielded as a weapon against a destitute father who may thereafter come into some kind of an estate subject to execution. Such might eventuate where one officiously furnishes part of the support, where a parent furnishes the other part, within his means, but not on as high a nutritional basis.

The main opinion fortunately has stated that such a principle is *not intended* to result in harassment, but it fails to take into account the human equation or the persistence of a possibly toothy mother-in-law. Nor does it recognize the principle that if a parent is destitute and as a consequence so is his son, the State equally has an histori-

---

8. 44 Ariz. 509, 39 P.2d 621.

9. Ibid, 39 P.2d 624, citing *Alvey v. Hartwig*, 106 Md. 254, 67 A. 132, 11 L.R.A.(N.S.) 678.

10. See, e. g., *Watkins v. Medical & Dental Finance Bureau, Inc.*, 101 Ariz. 580, 422 P. 2d 696, a father was held not liable for dental bill where he neither failed nor refused to provide dental work for child.

11. We so decide in awareness of the procedures set forth in Chapter 45b of Title 78, U.C.A.1953 (pocket supp.) the Public Support of Children Act which deals with determinations as to the amount of *current and future support* of children.

1. Which would most likely be quoted as the law in cases to come.

cal and legal duty to support such a child,—and if the principle mentioned were carried to its logical extreme, the officious one furnishing the support,—so far as the doctrine of subrogation is concerned,—should be able to recover from the State as well as from the parent, for his having relieved either or both from a responsibility affinitive to both.

I think the facts of this case justify the judgment, but I think that intention of the parties, their relationship, their motives, a strict bookkeeping accountability, reasonability, due process, etc., should be prefaced and reflected by clear proof, and in like manner should be concomitants of Good Samaritanism, volunteerism, Salvation Armyism, or unsoliciated officiousness.

MAUGHAN, Justice (dissenting).

The judgment of the trial court should be sustained, because it follows the statute; the opinion as circulated does not. Further, the judgment of the trial court is supported by all of the decisional law of this court dealing with child support; and the decision as circulated is not. Several such cases are cited in respondents' brief.

Chapters 45 and 45b, Title 78, are alluded to in the opinion, but these two chapters require an opposite result to that reached in the opinion. For example, 78–45–7 is as follows:

> When determining the amount due for support the court shall consider all relevant factors including but not limited to:
> (1) the standard of living and situation of the parties;
> (2) the relative wealth and income of the parties;
> (3) the ability of the obligor to earn;
> (4) the ability of the obligee to earn;
> (5) the need of the obligee;
> (6) the age of the parties; and
> (7) the responsibility of the obligor for the support of others.

Although the instant matter was brought under 78–45, had it been a 78–45b case a hearing to determine financial responsibili-

ty would have been required. See 78–45b–5 and 6.

The appeal has nothing whatever to do with the duty of support intrinsic to parenthood. The only question raised is whether the state can take judgment without a determination of, at least, the seven factors set out in 78–45–7. It should be obvious it cannot. And this is so whether one considers Chapter 45, before or after its amendment in 1973.

To say respondents' argument fails to distinguish between the right of one to reimbursement for child support furnished, and an adjudication of support, is to state a distinction without a difference.

A cursory analysis of the two statutes, as well as our case law, can lead to no other conclusion than that the trial court was correct in its ruling.

TUCKETT, Justice, concurs in the views expressed in the dissenting opinion of Mr. Justice MAUGHAN.