**L. Craig KNUDSON aka Lewis Craig Knudson, Plaintiff and Appellant,**

v.

**UTAH STATE DEPARTMENT OF SOCIAL SERVICES and Goldie Knudson, Defendant and Respondent.**

No. 18162.

Supreme Court of Utah.

March 15, 1983.

Thompson E. Fehr, Ogden, for plaintiff and appellant.

Robert D. Barclay, Ogden, for defendant and respondent.

OAKS, Justice:

When the Legislature adopted the Public Support of Children Act in 1975, it sought to augment public and private remedies against parents who neglected to support their minor children. *See* U.C.A., 1953, § 78–45b–1, *et seq.* The Act provided an administrative mechanism to collect support debts based on court orders, § 78–45b–4, and, in the absence of a court order, it provided an administrative proceeding (subject to judicial review) to fix parental liability to reimburse the state for amounts paid as public assistance to minor children. § 78–45b–5 and –6. This appeal is the latest in a succession of cases and amendatory legislation seeking to clarify the relationship between the Public Support Act and the earlier statutory and common-law remedies by which support obligations were imposed on parents in a divorce decree or other proceeding.

In *Mecham v. Mecham,* Utah, 570 P.2d 123, 125 (1977), the Department of Social Services brought an action to compel a husband to reimburse the Department for welfare payments it had made to his wife and child while the divorce action was pending. This Court affirmed a dismissal of that action, ruling that where the wife had sought temporary child support in the di-

vorce proceeding and the court's decree made no provision for such support, the matter was *res judicata* since the Department's rights were derived through the wife.

In 1977, perhaps partly as an outgrowth of the *Mecham* controversy, the Legislature enacted technical amendments to the Public Support of Children Act and to the Uniform Civil Liability for Support Act, § 78–45–1, *et seq.* These amendments, *inter alia,* clarified and strengthened the Department's right to enforce an obligee's right of support against an obligor, § 78–45–9(1); required any obligee who had received public assistance to notify the Department upon commencing any action to recover support, § 78–45–9(2); and authorized a court in any litigation involving support to assess arrearages based on the amount of public assistance received by the obligee, § 78–45–7(3). 1977 Utah Laws, ch. 145.

In *Roberts v. Roberts,* Utah, 592 P.2d 597 (1979), this Court held that under amended § 78–45–7(3) the Department could intervene in a divorce action to recover amounts it had paid as child support prior to the divorce decree, to the extent that the trial court found these amounts appropriate in the circumstances. Apart from that clear holding, the *Roberts* case gave no definitive guidance on what, if any, effect the 1977 statutory amendments had on the holding in *Mecham v. Mecham, supra,* since no opinion commanded a majority of the Court.[1]

This case involves facts very similar to *Mecham.* Craig and Goldie Knudson separated in the spring of 1978, soon after they had moved to Provo for Craig's work. Goldie and their 9-month-old son returned to Ogden and resumed residence in the mobile home the couple was purchasing there. Goldie asked Craig for $200 monthly payments for child support. Instead, Craig continued to make the $256 per month pay-

---

1. *State Division of Family Services v. Clark,* Utah, 554 P.2d 1310 (1976), was also inconclusive on its legal theory. In those consolidated cases, the state was allowed to recover reimbursement for support provided to the minor children of the defendant fathers without adjudication of the fathers' individual abilities to pay. However, the Court divided equally on the appropriateness of such a procedure in general, with the fifth justice concurring in result on the facts of the individual cases.

ments for the purchase-money obligation on the trailer, insurance, taxes, and lot rental (and did so until the entry of the divorce decree). Goldie filed suit for divorce in December, 1978. Although she sought temporary alimony and child support, no order was ever entered on these subjects.

From December, 1978, through July, 1979, Goldie received public assistance for child support totalling $1,408. Despite the statutory requirement in § 78–45–9(2), she did not notify the Department of her suit for divorce, and the Department entered no appearance in that proceeding. The divorce decree, entered November 21, 1979, made no mention of temporary alimony or child support or of arrearages of either. The decree embodied the parties' settlement agreement that Goldie should have $1 per month alimony and $150 per month child support, and that the equity in the mobile home should be divided equally.

In January, 1980, the Department initiated this administrative proceeding against Craig for reimbursement for the $1,408 child support payments made to his wife during the pendency of the divorce. After a hearing at which Craig was represented by counsel and testified, the administrative law judge ordered him to reimburse the Department in the amount of $729.[2] Craig thereupon sought judicial review under § 78–45b–6.1. The district court affirmed the administrative order, and Craig comes to this Court on appeal from that decision.

Appellant makes three arguments: (1) The divorce decree is *res judicata* on his liability for arrearages of child support and bars the Department's right to reimbursement. *Mecham v. Mecham, supra.* (2) His

due process rights were violated by the administrative hearing. (3) The Department erred in not giving him credit for the value of the housing he voluntarily provided to Goldie and their child during the period in question.

## I. RES JUDICATA

■ As to the Department's right to reimbursement for the child support it paid during the pendency of the divorce, the divorce decree does not meet the third requirement for the application of *res judicata*,[3] as defined in *Krofcheck v. Downey State Bank,* Utah, 580 P.2d 243, 244 (1978):

> (3) [T]he prior adjudication must have involved the same issue or an issue that could or should have been raised therein.

Goldie could not have obtained payment in the divorce proceeding for arrearages in child support to the extent that these amounts had been paid by the Department because the right to such payments then belonged to the Department by subrogation and by assignment. The Department could have pursued that liability against appellant in the divorce proceeding, as authorized in § 78–45b–3, but, having no notice of that proceeding, the Department never became a party. It should not be barred by *res judicata* in that circumstance.

The 1977 amendments summarized earlier, as well as the amendment that prevents an obligor and obligee from entering an agreement that would settle past support obligations and prevent the Department from recovering reimbursement therefor, § 78–45b–3(4), seem clearly intended to prevent the Department's right to reimbursement from being barred by *res judica-*

---

**2.** After considering the various factors specified in § 78–45b–6, the administrative law judge held that Craig was responsible to support his minor child during the pendency of the divorce even though the divorce decree made no mention of that subject. The judge computed Craig's liability as follows: $150 per month child support specified in the divorce decree, less $60 per month he had paid as lot rental for the trailer, times the number of months, equals arrearage of $780, less $51 Craig paid to Goldie in December, 1978, equalled $729 due the Department.

**3.** The first two requirements, same parties (or their privies) and final judgment, are met. The Department was in privity with Goldie because, among other reasons, under her November, 1978 assignment the Department was subrogated to her rights to support to the extent that the Department had made payments therefor. *Woolsey v. Woolsey,* Utah, 632 P.2d 868, 869 n. 1 (1981).

*ta* in the divorce proceeding. The specified means of protection is to notify the Department so it can participate in the divorce proceeding, as it did in *Roberts v. Roberts, supra.* The statute says nothing about the effect of the Department's not participating because it was not notified, as in this case, but where the statute is silent the normal rules of *res judicata* are not.

As is evident from our cases, *Krofcheck's* reference to "an issue that could or should have been raised therein" presupposes some party to the earlier proceeding who could have raised the issue. In most cases, that party is the same party who is litigating in the later proceeding, *e.g., Church v. Meadow Springs Ranch Corp.,* Utah, 659 P.2d 1045 (1983); *Bradshaw v. Kershaw,* Utah, 627 P.2d 528, 531 (1981); *Mendenhall v. Kingston,* Utah, 610 P.2d 1287, 1289 (1980); *Wheadon v. Pearson,* 14 Utah 2d 45, 376 P.2d 946 (1962), but it could also be some party in privity who had the right and a similar incentive to raise the issue in the earlier proceeding. In contrast, we are aware of no case where the third requirement has been deemed satisfied by a party who could have raised the issue if he had been a party to an earlier proceeding, when in fact he was not. We decline to apply *res judicata* in that circumstance, and therefore need not decide whether the requirements of due process would preclude such a bar in any case.

*International Resources v. Dunfield,* Utah, 599 P.2d 515 (1979), is analogous. There we held that *res judicata* did not apply to bar a plaintiff's pursuing a claim that had previously been pursued unsuccessfully against this same defendant by one who alleged that he was the assignee of the present plaintiff. Since the present plaintiff, not having been a party to the earlier litigation, had never had an opportunity to litigate the validity of the assignment to the plaintiff in that case or to litigate other issues on the merits of the controversy, we held that *res judicata* was no bar. Upon the same basis, we hold that the divorce decree does not bar the Department from pursuing its rights to reimbursement against the obligor husband on the facts of this case.

Although, as appellant argues, this case is factually indistinguishable from *Mecham v. Mecham, supra,* we believe the holding of that case on the *res judicata* effect of the divorce decree on the Department's ability to obtain reimbursement for child support payments pending the divorce has been superseded by the 1977 statutory amendments summarized earlier. Consequently, to the extent that *Mecham* differs from our holding in this case, it is no longer the law of this state.

## II. DUE PROCESS

■ Appellant argues that the administrative hearing violated his due process rights because the Department failed to plead and prove the material elements necessary to establish his proper support obligation, including the various factors specified in § 78–45b–6(2). We find no merit in this contention. This is not a case like that supposed in the plurality opinion in *Roberts,* 592 P.2d at 599, where an adjudicating authority has ordered reimbursement of the amount of payments made by the Department without considering the individual factors specified for administrative consideration in § 78–45b–6(2) or for judicial consideration in § 78–45–7(2). *Cf. State Division of Family Services v. Clark,* note 1 *supra.* True, the Department did not introduce sufficient evidence for such consideration in this case, but appellant himself presented sufficient evidence for the administrative law judge to make the individualized determination the statute contemplates. The contrast between the $1,408 reimbursement sought by the Department and the $729 amount ordered by the administrative law judge, together with the method of computation detailed in note 2, *supra,* is a sufficient answer to appellant's claimed violation of due process.

## III. CREDIT FOR VALUE OF HOUSING

■ Finally, appellant argues that the Department erred in not giving him credit

for the value of the housing [4] he voluntarily provided to Goldie and their child during the pendency of the divorce. The administrative law judge refused to credit appellant with the value of the housing or (in the alternative) with his payments on the trailer because under the divorce decree he received a one-half interest in the trailer and these were therefore "equity payments." It seems to be admitted that if appellant had paid Goldie $256 per month in cash he would have received credit for such payments, even though she used them to make the payments necessary for her housing in the trailer.

Obligors commonly fulfill their support obligations by a variety of means, including services or commodities in kind. While it may be administratively difficult to ascertain the value of such support in some cases, as the Department argues, we think reality and fairness and even sound administration demand it. As concerns the Public Support of Children Act, the Department of Social Services should shape its administration to measure the reality of parental support, rather than attempt to reshape reality to serve its administration.[5]

The measure of the obligor's credit should be the value of what he has furnished. If by furnishing housing he augments his own equity, as is claimed in this case, that is an appropriate consideration to urge in the divorce proceeding, which will divide the marital property and which may make an award for arrearages or reimbursement of public assistance paid for child support. (In case of conflict between court order and administrative order, the court order will govern, § 78–45b–20.) But where the Department was not a party to the divorce proceeding, as in this case, we think the Department should not weigh that property consideration against the value of what the obligor has provided.

Because the admitted value of the housing already provided by appellant (over $1,500) is well in excess of the amount of reimbursement ordered by the Department ($729), we resolve this case without remanding for another proceeding by holding as a matter of law that the Department was not entitled to any reimbursement from the appellant. The order of the Department is reversed.

HOWE and DURHAM, JJ., concur.

HALL, Chief Justice, concurring in the result:

I concur in the result only because I am not persuaded that the 1977 statutory amendments [1] in any way supersede the ruling of this Court in *Mecham v. Mecham.*[2] Nor am I convinced that the amendments otherwise relieve the *res judicata* effect of the divorce decree on the Department's belated effort to seek reimbursement.

STEWART, J., concurs in the concurring opinion of HALL, C.J.

---

**4.** In this case, the value is easily ascertainable since the parties had just rented the trailer for $225 per month but had to rescind the rental when they separated and Goldie moved back into the trailer.

**5.** This is not a case like that referred to in *Ross v. Ross,* Utah, 592 P.2d 600, 603–04 (1979), or *Annot.,* 47 A.L.R.3d 1031 (1973), where an obligor is not entitled to credit for expenditures (such as services in kind) that do not specifical-

ly conform to the terms of an order or decree. The reasons for the rule in that circumstance do not apply in this case, where there was no court or administrative order fixing appellant's support obligations at the time he provided housing for Goldie and their child.

**1.** U.C.A., 1953, § 78–45–1, *et seq.*

**2.** Utah, 570 P.2d 123 (1977).