541 So.2d 535 (1989)
Ex parte UNIVERSITY OF SOUTH ALABAMA, d/b/a the University of South Alabama Medical Center Hospital.
(Re UNIVERSITY OF SOUTH ALABAMA, d/b/a the University of South Alabama Medical Center Hospital v. Leroy M. PATTERSON).
87-1353.
Supreme Court of Alabama.
January 27, 1989.
*536 Thomas R. Boiler, Mobile, for petitioner.
John A. Courtney, Mobile, for respondent.
William Prendergast and Lois Brasfield, Asst. Attys. Gen., amicus curiae in favor of petitioner.
HOUSTON, Justice.
We granted this petition for writ of certiorari to determine the following issues:
(1) Whether the remoteness of the relationship between a father and his minor daughter can serve as a basis for the father to avoid liability for necessary medical services rendered to that minor daughter.
(2) Whether the totality of the circumstances in the instant case justifies the conclusion that reasonable, necessary medical services for the delivery of a full term infant to a minor mother were not "necessaries."
South Alabama Medical Center ("the hospital") filed this action against Leroy M. Patterson to recover for medical services rendered to Patterson's minor, unmarried daughter. Both parties filed motions for summary judgment on the following stipulated facts:
"1. Plaintiff [hospital] rendered medical services to Valarie R. Patterson in the amount of $3,674.91 on or about 24 July, 1986.
"2. These medical services were necessary and the amount of the bill was reasonable.
"3. Valarie R. Patterson was 15 years old at the time services were rendered, having a birth date of 9 July, 1971.
"4. Valarie R. Patterson is the natural daughter of Leroy Patterson.
"5. Leroy Patterson has been divorced from the mother of Valarie Patterson for some time, and had not seen Valarie Patterson for a period in excess of five (5) years prior to the rendering of medical services by the Plaintiff.
"6. Leroy M. Patterson was unaware of and did not consent to the rendering of medical services to his minor daughter Valarie Patterson.
"7. Plaintiff initially rendered [a] bill for these necessary medical services to the stepfather of Valarie Patterson, who denied liability."
The trial court entered a summary judgment for the father, holding that he was not liable for his daughter's medical expenses. The hospital then appealed to the Court of Civil Appeals, which affirmed. 541 So.2d 533. The Court of Civil Appeals concluded that if the relationship between a father and his minor child was sufficiently remote, the father was not liable for necessary medical services rendered to his child; that what are necessaries is determined by the facts of each case; and that the totality of the circumstances as stipulated in the trial court justified the court's conclusion that the medical expenses were legally not necessaries for which the father should be liable.
The Court of Civil Appeals cited the following circumstances to justify its holding:
1. The father's divorce "sometime prior" from the mother;
2. Lack of contact with the child for more than five years prior to the date of services;
3. Lack of knowledge of the pregnancy or the service rendered at delivery of the illegitimate child;
*537 4. Absence of evidence of the divorce judgment's terms or of any other medical payments for the child by the father;
5. An unsuccessful attempt to collect payment from the child's stepfather.
The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents. Ala.Code 1975, § 26-17-3. Parental support is a fundamental right of all minor children. It is a continued right, which cannot become stale until after the child reaches the age of majority. Williams v. State, 504 So.2d 282 (Ala.Civ. App.1986). The right of support is inherent and cannot be waived, even by agreement. Northcutt v. Cleveland, 464 So.2d 112 (Ala.Civ.App.1985); Willis v. LeVesque, 402 So.2d 1003 (Ala.Civ.App.1981).
It is well established in this state that a father has a legal and moral duty to support his minor children, Ala.Code 1975, § 30-3-1; Brock v. Brock, 281 Ala. 525, 205 So.2d 903 (1967); Hamilton v. Hamilton, 428 So.2d 65 (Ala.Civ.App.1983), and this duty exists even though the father is not the custodian of the children, Cunningham v. Cunningham, 480 So.2d 1238 (Ala. Civ.App.1985); Hamilton v. Hamilton, supra. Section 30-3-1 contemplates support for the children of divorced parents who, but for the divorce, would have continued to be entitled to the support of their father. It stems from the presumed inability of such children, by reason of their minority, to provide for themselves. Ex parte Brewington, 445 So.2d 294 (Ala.1983). This duty of support includes the obligation to pay for medical necessaries of the children. § 30-3-1; Waltman v. Waltman, 480 So. 2d 594 (Ala.Civ.App.1985); see, also, Blue Cross & Blue Shield v. Bolding, 465 So.2d 409 (Ala.Civ.App.1984).
"The term necessaries ... contemplates and includes many things ...; [and] medical care has ever and always been included among necessaries, and when needed is the proper subject of recovery in a civil action. This proposition has never been doubted."
Osborn v. Weatherford, 27 Ala.App. 258, 259, 170 So. 95, 96 (1936).
Appellate courts of this State have considered circumstances affecting the determination of "necessaries." The determination of what are necessaries depends upon the facts and circumstances of each case. See Ragan v. Williams, 220 Ala. 590, 127 So. 190 (1930); Nelson v. Nelson, 421 So.2d 120 (Ala.Civ.App.1982); Guthrie v. Bobo, 32 Ala.App. 355, 26 So.2d 203 (1946). Lack of knowledge of the fact that necessaries are furnished does not relieve a father of responsibility to furnish maintenance to minor children, Guthrie v. Bobo, supra; nor does refusal to consent to medical services relieve a father of liability, Nelson v. Nelson, supra; nor does the fact that the divorce judgment does not require him to pay either child support or medical expenses of the child relieve him of liability. Northcutt v. Cleveland, supra.
Furthermore, where a divorce judgment grants the custody of a minor child to its mother but makes no provision for its support, and a third person thereafter supports it or furnishes it with necessaries, the father is liable to the third person therefor. See Barrett v. Barrett, 44 Ariz. 509, 39 P.2d 621 (1934); Stech v. Holmes, 210 Iowa 1136, 230 N.W. 326 (1930); Dilger v. Dilger, 271 S.W.2d 169 (Tex.Civ.App.1951); Rees v. Archibald, 6 Utah 2d 264, 311 P.2d 788 (1957).
The Court of Civil Appeals cited Akron City Hospital v. Anderson, 68 Ohio Misc. 14, 428 N.E.2d 472 (1981), as generally supporting its conclusion that the daughter's medical care was not a legal necessary for which Patterson was liable. In Akron, a 15-year old girl was admitted to the hospital for an elective, non-therapeutic abortion. The Court in Akron noted that the father was divorced from the mother, did not consent to the abortion, had no knowledge of the pregnancy or of the abortion until after the child's release from the hospital, and did not at any time agree to the services performed by the hospital. The Akron court concluded:
"The liability of this defendant is predicated on a showing of the necessity of the medical procedure and a similar situation *538 was present as to the state's responsibility. It is consistent with the reasoning of the Supreme Court cases to equate the state's responsibility to the liability of the defendant, a noncustodial father. The natural conclusion of this reasoning is that a noncustodial father who neither consented nor authorized the abortion is not liable for the same unless it was medically necessary." (Emphasis added.)
68 Ohio Misc. at 18, 428 N.E.2d at 475. In Akron, there was no evidence that there was a medical necessity for the abortion. However, in the instant case, as distinguished from Akron, the trial court rendered judgment on the stipulated fact that the "medical services were necessary and the amount of the bill was reasonable."
In the instant case, the Court of Civil Appeals determined that the stipulated medical necessity was not a legal necessary for which Patterson could be held liable, because of his remote relationship with his daughter. However, it is the opinion of this Court that once medical services to minors are deemed medically necessary, the lack of a close relationship between the parent and the child cannot be a basis for avoiding liability. Although a father is not always liable for the expenses of his minor child regardless of the nature of those expenses, the determination of liability is based upon the question of whether the expense is necessary, not on the quality of the relationship between the father and the minor child.
Many children throughout Alabama rely upon the courts of Alabama, pursuant to Title IV-D of the Social Security Act (42 U.S.C. § 651 et seq.) and the Child Support Act of 1979 (Ala.Code 1975, § 38-10-1 et seq.), to see that their parents provide their support. Many absent parents, like Patterson, have gone many years without paying support, without maintaining contact with their children, and without making themselves knowledgeable as to the specific needs of their children, medical or otherwise. From the record before us, there is nothing to indicate that Patterson's lack of contact with his daughter was not the result of his own doing. To hold that the circumstances in this case can absolve Patterson from his legal duty to provide needed medical care for his minor daughter could have the result of encouraging absent parents to avoid contact and communication with their children. If we affirm the judgment of the Court of Civil Appeals, then an absent father, by avoiding contact with his minor child for an extended period of time, could avoid responsibility for vital medical services which, though admittedly necessary to the child's health and welfare, are deemed not legal necessaries because of the absent parent's "remoteness" from the child. To allow such a judgment to stand would conflict with the child support laws in Alabama and with the stated intent of the Alabama Legislature "that children shall be maintained from the resources of the responsible parents." See Ala.Code 1975, § 38-10-11 (1988 Supp.); State ex rel. Wilson v. Wilson, 475 So.2d 194 (Ala. Civ.App.1985). We will do nothing to circumvent the fundamental right of a child to financial support from its parents, wherever they live and whether such parents live together or apart. A child has this fundamental right to financial support until its majority or death or a legal termination of parental rights.
Based on the facts before us, we conclude that the Court of Civil Appeals made an erroneous conclusion of law. The remoteness of the relationship between a father and his minor child does not affect the necessity of medical services to that minor child. The medical services were stipulated to be necessary and reasonable. No single circumstance was sufficient to excuse Patterson from liability, nor was the totality of the circumstances sufficient to justify the Court of Civil Appeals' conclusion that the medical services were legally not necessaries for which Patterson should be liable.
We, therefore, reverse the judgment of the Court of Civil Appeals and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
*539 JONES, ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
When children have children, out of wedlock, it presents tremendous social problems.[1] This case presents one of those problems, viz., who should pay for an unwed minor's expenses of pregnancy and confinement? The majority, finding that the expenses were "necessary," holds that the father of the unwed minor mother must pay for them. I cannot accept this as being either the legal, or the equitable, solution to the problem.
In my opinion, because these expenses were incurred by the unwed minor mother during her confinement for the delivery of an illegitimate child, the law applicable to illegitimate children should be applied; if that law is applied, I submit, these admittedly "necessary" expenses must be paid either by the father of the illegitimate child, by the unwed minor mother who contracted for them, or by "the public authority chargeable by law with support of the child." Alabama's Uniform Parentage Act (Ala.Code 1975, §§ 26-17-1 to 26-17-21).
I recognize that the law imposes on a father both a legal and a moral obligation to care for his minor children, and that in the ordinary case a father can be required to pay for "necessaries" that are furnished to his minor children, but that principle of law should not be applied to the facts of this case.
The central, material fact in this legal controversy is that these "necessaries" involve the birth of a child to an unwed minor mother, and the law specifically provides who has the burden of bearing the expenses of the minor mother's pregnancy and confinement. This burden is not on the shoulders of the illegitimate's maternal grandfather!
Alabama is a common law state, Ala. Code 1975, § 1-3-1, and, at the common law, even the father of an illegitimate child was not responsible for such expenses. See, generally, 10 C.J.S. Bastards § 18 (1938). This illogical rule of the common law, of course, has been replaced by statute in Alabama, and Alabama, like many other jurisdictions, now provides specifically for the manner of establishing the paternity of children born to unwed mothers and provides a method for creditors like the University of South Alabama to enforce payment of expenses incurred by the unwed mother during her pregnancy and confinement. It does not include the remedy allowed by the majority.
As I have already pointed out, the question in this case is not whether the reasonable expenses of this unwed mother's pregnancy and confinement were "necessary." *540 That is admitted. The question is: Who should pay them?
It is my opinion that Alabama law now places, and always has placed, the responsibility for the support and maintenance of an illegitimate child on the natural father.
By statute, in Alabama, the duty of a father to support his illegitimate child was previously established through proceedings commonly denominated as "bastardy" proceedings, which were neither strictly civil nor strictly criminal in nature, but quasi-criminal. Hunter v. State, 293 Ala. 226, 301 So.2d 541 (1974). An adjudication of paternity was required in order to place any duty of support upon a father, of course, but paternity could be proven by a formal adjudication or by a father's public acknowledgement. Turner v. State, 39 Ala.App. 527, 104 So.2d 775 (1958). A judicial determination that the defendant was the father of the child subjected him to all of the obligations for the care, maintenance, and education of the child as the law imposed upon fathers of legitimate children. Keener v. State, 347 So.2d 398 (Ala. 1977).
Because the illegitimate child in this case was born on July 18, 1986, this case, in my opinion, is controlled by the provisions of the Alabama Uniform Parentage Act (Ala. Code 1975, §§ 26-17-1 to 26-17-21).
The Alabama Uniform Parentage Act is remedial legislation and was specifically designed to cure some of the defects that existed in the predecessor statutes. Ritter v. State, 494 So.2d 76 (Ala.Civ.App.1986). Because it is remedial legislation, I would apply to it the statutory construction that should be accorded to remedial legislation, that is, the Act should be construed liberally to effectuate its purpose. Ex parte Burks, 487 So.2d 905 (Ala.1985), on remand, Burks v. Phyfer, 487 So.2d 908 (Ala. Civ.App.1986).
As I read the provisions of Alabama's Uniform Parentage Act, there is a specific method available not only to determine the paternity of this child, but to fasten responsibility on the shoulders of the natural father, who is the one the law says bears the responsibility.
Section 26-17-6 provides:
"(a) A child, a child's natural mother, or a man presumed to be its father under subdivision (1), (2), or (3) of section 26-17-5(a), may bring an action within five years of the birth of said child for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of section 26-17-5(a); or
"(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under subdivision (4) or (5) of section 26-17-5(a).
"(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under section 26-17-5 may be brought by the child, the mother, or personal representative of the child, the public authority chargeable by law with support of the child, the personal representative or a parent of the mother if the mother has died, a man alleged or alleging himself to be the father, or the personal representative, or a parent of the alleged father if the alleged father has died or is a minor.
"(d) If an action under this section is brought before the birth of the child, all proceedings shall be stayed until after the birth, except service of process and the taking of depositions to perpetuate testimony.
"(e) If the child has been adopted, an action may not be brought. (Acts 1984, No. 84-244, p. 375, § 6.)" (Emphasis added.)
As I read this Act, the mother of the child, the Department of Human Resources, or certain others may bring an action to determine paternity, and, once paternity is established in such an action, the court may order the father to pay the reasonable expenses of the mother's pregnancy and confinement. Section 26-17-14 provides:

*541 "(a) The order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes. Upon paternity being established, the court shall immediately determine support payments at the conclusion of the paternity hearing and make support payment determination a part of the order establishing paternity.
"* * * *
"(d) The order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the custody of the child or the furnishing of bond or other security for payment under the order. The order may direct the father to pay the reasonable expenses of the mother's pregnancy and confinement." (Emphasis added.)
Construing the Act in its entirety, and cognizant of its overall purpose, I can conclude only that the unwed minor mother and the Department of Human Resources could have brought an action to determine the existence or non-existence of the father and child relationship and that the University of South Alabama Medical Center Hospital could have intervened to enforce its rights once paternity was established. The language of Alabama's Act is substantially similar to that of the uniform act proposed by Professor Krause in his article at 44 Tex.L.Rev. 829, which provided that paternity actions could be enforced "by other persons including private agencies to the extent that they have furnished the reasonable expenses of pregnancy, confinement, education, necessary support, or funeral expenses." 44 Tex.L.Rev. 837 (1966). (Emphasis added.) Alabama's Act states in the enforcement section that once paternity is established, the determination of paternity can be enforced by "any other person, including a private agency, to the extent that these expenses have been or are being furnished." Ala.Code 1975, § 26-17-15(a). (Emphasis added.)
The Supreme Court of Wisconsin, when faced with the question facing us, concluded that the father of an illegitimate child can be held responsible for the medical expenses of the mother's pregnancy, stating: "The public policy underlying these paternity statutes is that the father of the infant should bear responsibility for expenses incurred as a result of a pregnancy in which he participated." Madison General Hospital v. Haack, 124 Wis.2d 398, 369 N.W.2d 663, 664 (1985).
The Department of Human Resources, in an amicus brief, argues:
"The Alabama Department of Human Resources services over 200,000 children for whom support is being sought in Alabama pursuant to Title IV-D of the Social Security Act. In Alabama, this support includes medical support.... Many thousands of children throughout Alabama desperately need medical support from their absent parents, and, through the Department's services, rely upon the courts of Alabama to see that their parents provide the support. Many of the absent parents, like Mr. Patterson, have gone many years without paying support, without maintaining contact with their children, and without making themselves knowledgeable as to the specific needs of their children, medical or otherwise. Under the holding of the Alabama Court of Civil Appeals as it now stands, the argument could clearly be made that an absent parent, by avoiding contact with the child for five years or more, may avoid responsibility for vital medical services which, though admittedly necessary to the child's health and welfare, are made not `necessaries' by the absent parent's `remoteness' from the child."
I agree with the Department that there is a tremendous problem in providing support for many children in the state, and I would agree with the argument of the Department that a natural father should not be able to avoid his responsibility to pay reasonable medical expenses for his minor child. I do not believe, however, that a father is legally responsible for the medical expenses connected with his minor daughter's pregnancy and confinement. The common law did not saddle him with these expenses and neither do our statutes. Nevertheless, there is a statutory method *542 available to the Department to place these on the person the law says is responsible, the father of the child born to the unwed minor mother.
It appears to me that Alabama's Uniform Parentage Act is broad enough to permit the Department to obtain an adjudication of the parent and child relationship and then request the court to order the actual father of the child to pay for the reasonable expenses of the pregnancy and confinement. Ala.Code 1975, § 26-17-6(c).
In fact, I am convinced that the mother of this illegitimate child may be responsible also for the expenses of her pregnancy and confinement. In Ex parte Odem, 537 So. 2d 919 (Ala.1988), this Court held that "medical services provided an infant child of a minor are `necessaries' for which the minor parent may be obligated to pay." (Emphasis added.) In that case the unwed minor parent contracted for the medical services rendered to her child, and I cannot distinguish that case from this one insofar as legal principles are concerned.
I believe, under the facts of this case, that the expenses incurred by the minor mother in connection with her pregnancy and confinement, although "necessaries" insofar as the unwed minor mother is concerned, are not "necessaries" for which the father of the unwed minor mother could be held legally responsible.
I do not address when and under what other circumstances the father of a minor child could be legally liable for reasonable medical expenses of his own minor child. I think the majority may be correct in holding that a father can be liable for "necessaries" even though he is divorced and does not have custody of the child, but I do not think he is liable here. This minor was pregnant and bore a child; I do not feel, under these facts, that the law places the legal responsibility on her father to pay the expenses of her pregnancy and confinement. Using the reasoning of the majority, I ask one last question: If the father of the illegitimate child is also a minor, why would not his parents be responsible also?
Consequently, I must respectfully dissent.
NOTES
[1] Unquestionably, the problem of illegitimacy is a major problem not only in Alabama, but in the entire country, and during the past two decades, the United States Supreme Court and the National Conference of Commissioners on Uniform State Laws have addressed the problem through Court decisions and the drafting of a model act, respectively.

The Uniform Parentage Act (1973), which has been substantially adopted in Alabama (Ala. Code 1975, §§ 26-17-1 to 26-17-21), had its genesis in an article entitled "Bringing the Bastard into the Great Societya Proposed Uniform Act in Legitimacy," 44 Tex.L.Rev. 829 (1966), written by Professor Harry D. Krause, College of Law, University of Illinois. In a forward to that article, the editors of the law review stated the following:
"Our nation recently has been directed toward a comprehensive assault on poverty. One aspect of the poverty problem is illegitimacy, and, unfortunately, the laws of illegitimacy in the United States are inadequate. Within the states there has been little concern with the total ramifications of bastardy: The courts have proceeded in an uneven fashion from common-law principles which were strongly influenced by ancient moral taboos, and the legislatures have failed to provide a full-scale statutory treatment. Among the states there is little uniformity and, because of our fantastic population mobility, this lack of uniformity has created a conflict of laws problem which is especially acute in this area. A third major fault is the failure of the laws to protect the interest of the true victim of illegitimacy the child. In order to initiate the discourse and action necessary for the resolution of these problems of illegitimacy. Professor Krause has undertaken a difficult task, that is, to draft a uniform act which is sufficiently broad to handle the major substantive issues while, at the same time, sufficiently basic and eclectic to appeal to the majority of states."
44 Tex.L.Rev. 829.