**Marilyn Jean Draney KELLY, Plaintiff and Appellant,**

v.

**Ronald Stuart DRANEY, Defendant and Respondent.**

**No. 870060–CA.**

Court of Appeals of Utah.

May 10, 1988.

---

Stephen L. Henriod (argued), Nielson & Senior, Salt Lake City, for plaintiff and appellant.

Robert A. Echard, Christopher L. Shaw (argued), Gridley, Echard & Ward, Ogden, for defendant and respondent.

Before DAVIDSON, BENCH and GARFF, JJ.

## OPINION

DAVIDSON, Judge:

Plaintiff Marilyn Kelly (Kelly) appeals from a court order which: 1) refused to order defendant Ronald Draney (Draney) to pay accrued child support or Kelly's expenses for attending the proceedings; 2) found Kelly in contempt for thwarting Draney's visitation rights; and 3) modified Draney's visitation rights. Plaintiff also argues that the trial court erred by exercising jurisdiction after the state of Washington had exercised jurisdiction under provisions of the Uniform Child Custody Jurisdiction Act (UCCJA).

The parties were married on June 10, 1978 in Nevada. One child, Spencer, was born as issue of the marriage. The parties were divorced on January 27, 1981. Kelly was awarded custody of Spencer while Draney was granted "reasonable rights of visitation." A supplemental divorce decree modified the visitation order to include overnight visits on alternating weekends. For several months after the divorce, Draney was permitted visitation. Then in late July 1981, Kelly and Spencer moved to Arizona. Draney was able to visit in March and August of 1982.

In 1983, Kelly, her new husband and Spencer moved from Arizona to Washington. In March of 1983, Kelly took Spencer to a sexual abuse center in Washington claiming that Draney had sexually abused Spencer during the August, 1982 visit.[1] Based on the center's report, a Washington court took emergency jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA) and terminated Draney's visitation until he received a psychological evaluation. Less than a year after moving to Washington, and before the Washington court had ruled, Kelly and Spencer moved back to Arizona.

In November 1984, Draney filed an order to show cause in Washington requesting custody of Spencer. The court denied the request. In December 1984, Draney prevailed in a damage suit he had filed in Utah against Kelly in 1981. The court found Kelly's allegations that Draney had sexually abused Spencer and Kelly's children from prior marriages constituted libel and slander.[2] Accordingly, the court awarded Draney a $75,000 judgment. Kelly apparently filed bankruptcy shortly thereafter, and the judgment was discharged.

---

1. Plaintiff never offered a satisfactory explanation for the seven month delay from August 1982 to March 1983 blaming the delay on a pediatrician and the sexual abuse center.

2. These allegations were prior to the allegation raised to the Washington court.

In September 1985, Kelly filed an order to show cause in Utah seeking back child support, an increase in prospective child support, attorney fees, travel expenses and lost wages to attend the proceedings in the case. In November 1985, Draney filed an order to show cause in Utah claiming that Kelly had denied his visitation rights, made wrongful accusations against him in Washington and Arizona necessitating expenditure of substantial sums, and failed to show a substantial change in circumstances to justify modifying the decree. The Utah court ordered Draney to pay future child support but, because the visitation issue was still pending in Washington, the court stayed the Utah proceedings until the Washington court ruled. The Washington court subsequently ordered that Draney have supervised visitation with the child. The remainder of the Washington court's order is unclear from the record. In May 1986, the Washington court transferred the proceedings to Arizona. No action has been taken in Arizona subsequent to the transfer.

In November 1986, a trial was held in Utah concerning Kelly's request for back child support and an increase in child support, and Draney's claim that Kelly should be held in contempt for refusing to allow him visitation. At trial, it was established that Draney had been permitted visitation on only three occasions since Kelly left Utah: in March 1982, August 1982, and January 1986. Kelly testified that Draney had not paid child support for 1983, 1984 nor 1985. The court concluded:

> Since the plaintiff has been employed essentially full time since the divorce, losing $70.00 per day to attend court in Utah[,] an award of unpaid child support and the $869.00 would at this time be an award to the plaintiff and not for the benefit or in the best interest of Spencer and this Court will not condone the plaintiff's contempt by affording her the relief requested and therefore no judgment for unpaid child support or for $869.00 should be awarded.

The court also ordered Draney to pay future child support upon the condition that Kelly make arrangements to allow supervised visitation. The court ordered this conditional visitation to continue until August 1987. After that, visitation would be in accordance with the existing divorce decree.

### Jurisdiction

■ We first note Utah Code Ann. § 30–3–5(3) (1987):

> The court has continuing jurisdiction to make subsequent changes or new orders for the support and maintenance of the parties, the custody of the children and their support, maintenance, health, and dental care, or the distribution of the property as is reasonable and necessary.

This statute establishes continuing jurisdiction in the original court granting the decree of divorce. *See Rawlings v. Weiner,* 752 P.2d 1327 (Ct.App.1988).

Kelly admits the Utah court retains jurisdiction but contends that the Utah court should have declined to exercise jurisdiction under the UCCJA. Utah Code Ann. § 78–45c–7(3) (1987)[3] addresses this issue:

> In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
>
> (a) if another state is or recently was the child's home state;
>
> (b) if another state has a closer connection with the child and his family or with the child and one or more of the contestants;
>
> (c) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
>
> (d) if the parties have agreed on another forum which is no less appropriate; and
>
> (e) if the exercise of jurisdiction by a court of this state would contravene

3. The quoted sections of 78–45c–7(3) are un- changed from the time of trial.

any of the purposes stated in § 78–45c–1.

Plaintiff chose to submit herself to the jurisdiction of the Utah court by filing her order to show cause in September 1985. Defendant agreed to litigate in this forum by filing his response. Since plaintiff sought jurisdiction in Utah, she will not now be heard to claim error on the part of the court. The action of the parties is precisely that described by section 78–45c–7(3)(d) quoted above.

The record shows Washington transferred the proceedings to Arizona in May of 1986, two years after plaintiff moved. Plaintiff has taken no action whatsoever in the Arizona courts. Utah Code Ann. § 78–45c–14(1) (1987) states:

> If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

Both standards show Utah is the appropriate forum for this action.

In *Trent v. Trent*, 735 P.2d 382, 383 (Utah 1987), the Utah Supreme Court affirmed the trial court's authority under the UCCJA to decline to relinquish jurisdiction to Idaho. In *Trent*, the children had neither lived in nor had any contact with the state of Utah. While *Trent* dealt exclusively with enforcement of visitation, the court held that Utah did not abuse its authority in declining to relinquish jurisdiction. Likewise, the trial court below has continuing jurisdiction unless it chooses to relinquish jurisdiction, based on the best interests of the children. We affirm that the trial court properly retained jurisdiction under the Utah UCCJA, Utah Code Ann. §§ 78–45c–1 to –26 (1987).

### Contempt

■ Kelly appeals the trial court's order which found her in contempt for thwarting Draney's visitation rights. In *Sinclair v. Sinclair*, 718 P.2d 396 (Utah 1986), the Utah Supreme Court enumerated the standard of review for contempt of court; "To find contempt, the court must find from clear and convincing proof that the contemnor knew what was required of her, had the ability to comply, and willfully and knowingly failed and refused to do so." *Id.* at 398. The record establishes that Draney has been allowed visitation on only three occasions since Spencer left Utah: March 1982, August 1982, and January 1986. Furthermore, Draney has never been allowed phone contact with Spencer since the divorce in 1981. Kelly's behavior towards the court ordered visitation, notwithstanding periods of court ordered cessation of visitation, has been clearly egregious. We affirm the trial court's finding of contempt by Kelly in her consistent refusal to follow the direct court orders of visitation between Draney and Spencer.

■ In *Acton v. Deliran*, 737 P.2d 996 (Utah 1987), the Utah Supreme Court reviewed the case law concerning findings of fact. The Court stated, "Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are 'clear, uncontroverted, and capable of supporting only a finding in favor of the judgment.' " *Id.* at 999 (quoting *Kinkella v. Baugh*, 660 P.2d 233, 236 (Utah 1983). Such findings "should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Id.* (quoting *Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979). The findings in this case fail to meet *Acton* standards in two areas: (1) Kelly's contempt fine or assessment, and (2) how the offset of unpaid child support was applied against any contempt fine or assessment. It appears from the record and the findings that the court intended to offset the accrued child support against the assessment for contempt. But this is not made clear in the findings. Contempts are commonly classified as civil or criminal. In the leading case of *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911), the United States Su-

preme Court delineated the differences between civil and criminal contempt; "The classification, then, depends upon the question as to whether the punishment is punitive, in vindication of the court's authority, or whether it is remedial, by way of a coercive imprisonment, or a compensatory fine, payable to the complainant." Further support of this concept is found in *South Dade Farms v. Peters*, 88 So.2d 891, 899 (Florida 1956), where the Supreme Court of Florida held:

> A civil contempt proceeding naturally involves in some measure a transgression against the dignity of the court and the prestige of its order, however, it is in actuality a proceeding between the parties to the cause and is instituted and tried as a part of the main case.

The Court further states:

> In an appropriate civil contempt case the court may compel performance of a required act by coercive imprisonment or in the event that the violation of the decree has resulted in damages to the injured party, there is adequate authority to support the assessment of a "compensatory fine" to be paid by the wrongdoing party to the party injured.

The present case is one of civil contempt. Kelly's offense is not primarily an offense against the court, but against Draney, in whose behalf the mandate of the court was issued.

In 17 C.J.S. *Contempt* § 94 (1963), it is stated, "A court has power in a contempt proceeding to award indemnity or a compensatory fine when authorized to do so by statute...." Likewise, Utah Code Ann. § 78–32–11 (1987) states:

> If an actual loss or injury to a party in an action or special proceeding, prejudicial to his rights therein, is caused by the contempt, the court, in addition to the fine or imprisonment imposed for the contempt or in place thereof, may order the person proceeded against to pay the party aggrieved a sum of money sufficient to indemnify him and to satisfy his costs and expenses; which order and the acceptance of money under it is a bar to an action by the aggrieved party for such loss and injury.

This section grants the court power to enter judgment in favor of the aggrieved party for any actual loss suffered if caused by the other party through his contemptuous acts. *Foreman v. Foreman*, 111 Utah 72, 176 P.2d 144 (1946); *In re Hoover*, 44 Utah 476, 141 P. 101 (1914); *Davidson v. Munsey*, 29 Utah 181, 80 P. 743 (1905). We remand to the trial court for additional findings on this issue. These should include the necessary findings to support the assessment of an award against plaintiff, the amount of the award, the amount of judgment against defendant for accrued child support and past judgments and should explain the offset if that is what the court desires to accomplish.

We suggest that visitation be reexamined. We note the court ordered a monitored visitation for a period of time to allow Draney and Spencer to become reacquainted. If this has been accomplished, the prior order should probably be allowed to stand. However, if the monitored visitation has not taken place, we recommend a phase-in of visitation since the child has not been permitted meaningful contact with his father since 1982. We emphasize that we do not intend by these suggestions to restrict the trial court from making any orders regarding the child and his parents that it may deem appropriate in this proceeding or in any other.

We remand to the trial court for the entry of such additional findings and other action that the court deems appropriate, in accordance with this opinion. Costs are awarded to defendant.

GARFF, J., concurs.

BENCH, J., concurs in result.